STISSER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department.   July 6, 1898.)

1. RAILROADS—DIVISION FENCES—BARBED WIRE.
   A fence made of Buckthorn wire, consisting of flat iron twisted ribbons about ½ inch wide, with teeth 1½ inches apart, is not a barbed-wire fence, within Laws 1891, c. 367, providing that barbed wire shall not be used in constructing fences required of a railroad company against adjoining premises.

2. SAME—STATUTES—RETROSPECTIVENESS.
   Laws 1891, c. 367, providing that barbed wire shall not be used in constructing fences maintained by railroads against adjoining premises, does not apply to fences constructed before its passage.

   Landon, J., dissenting.

Appeal from trial term, Madison county.

Action by Augustus Stisser against the New York Central & Hudson River Railroad Company.   There was a judgment for plaintiff, and defendant appeals.   Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

C. D. Prescott, for appellant.

Joseph D. Senn, for respondent.

PARKER, P. J.   The plaintiff and defendant owned adjoining lands, and it was the duty of the defendant to maintain the division fence between them.   The fence which the defendant put there was one consisting of posts, with five wires, known as "buckthorn," stretched upon them, and fastened with staples.   Such wire consisted of a flat iron ribbon about ⅓ inch wide, and twisted about three times in a foot.   On one side were saw teeth cut in about ¼ inch in width at the base, and 1½ inches apart.   At a certain place on such fence the wire next to the top one had become loose, and dropped down to within a foot or more of the ground.   On May 20, 1895, plaintiff turned his colts into that lot.   At the same time he found the wire down, and hung it back to its place, over a nail that he drove into the post.   The next morning his colt was found injured, being cut "on the gambrel joint inside of the right hind leg."   And, from blood and hair found on the wire, it is evident that such injury was caused by the colt's becoming entangled in such wire, which had doubtless again fallen off of the nail on which plaintiff hung it.   This action is to recover damages for the injury so sustained.

When this case was before us on a former appeal (46 N. Y. Supp. 1014) the question as to the effect of section 32 of the railroad law (chapter 676, Laws 1892) was not considered by us; but we then decided that, considering the case as unaffected by the statute, the maintenance of such a fence, under all the circumstances attending it, was not sufficient to charge the defendant with having negligently produced the injury complained of.   The record now before us contains substantially the same facts that then appeared, but in this case the trial judge, in substance, charged the jury that it was for them to say whether this wire was a barbed wire, within the meaning

of the statute; that, if it was, the fence was an illegal fence, and defendant was guilty of a violation of the law in maintaining it, and was therefore responsible for the damages accruing from its use, provided the plaintiff was free from contributory negligence. We are now called upon to pass upon the correctness of this charge.

As to the first question, it would seem to depend upon a construction of the statute, and to have been one for the court rather than for the jury; but, however that may be, we cannot concur in the conclusion that the wire used in this fence was a barbed wire, within the meaning of the statute. That a saw tooth is not a barb, within the usual meaning of that word, is, I think, clear. That there was a "barbed wire," known to commerce by that name, and differing from the narrow strip of iron used in this fence, is also apparent. It is denominated by the plaintiff, in his evidence, as "regular barbed wire," and was used in the fence on several sides of the lot in question. The peculiar characteristic of a barb is that, when once it fastens to a body, it clings to it, and tears in the effort to loosen it. The points upon a barbed-wire fence catch and cling to the body which comes in contact with it, and are loosened only by tearing out. The teeth on the ribbon in question cut, but have none of the clinging and tearing features of a barb. Doubtless, both are liable to injure animals coming in contact with them; but one cuts only, the other clings to and tears. It is the barb that is prohibited by statute, not the sharp edge that cuts. If the ribbon was sharp like a knife, and had no teeth like a saw, it could not be pretended that it was prohibited, and yet it would be equally dangerous. It was what plaintiff calls the "regular barbed wire,"—the one known to commerce by that name,—which, in our judgment, the statute intended to prohibit, and not the so-called buckthorn fence, of which the plaintiff now complains.

But if we are to consider this ribbon in question as a barbed wire, within the meaning of the statute, the question remains whether the prohibition is applicable to fences constructed many years before its passage. The obligation of a railroad company to fence against adjoining premises is created by statute. The earlier ones on the subject provided that the fence should be of "the height and strength of a division fence as required by law." It made no provision whatever as to the material of which it should be constructed. Subsequently, and in 1854 (chapter 282, § 8), there was inserted in the law this further provision: "A sufficient post and wire fence of requisite height shall be deemed a lawful fence within the provisions of this statute." So the law remained until 1891, and therefore, when this fence was built, some 16 years ago, there was no legal prohibition against it. By chapter 367 of the Laws of 1891, the section was amended by adding to the above provision the following: "But barbed wire shall not be used in constructing the same;" and here, for the first time, appears the prohibition upon which the plaintiff relies. Clearly, this provision does not in terms apply the prohibition to fences already constructed. If the words "in constructing" had been omitted, and the section had been made to read, "A sufficient post and wire fence of requisite height shall be deemed a lawful

fence within the provisions of this section, but barbed wire shall not be used in the same," there would possibly be an indication that it was to apply to all fences. Its use in a fence would then have been prohibited. But, by limiting the prohibition against its use to the "construction" of a fence, it would seem that it was not intended to prohibit the use of such wire in those instances where the fence had already been constructed. It is argued that the legislature would have inserted the word "hereafter" before the word "used," had it intended the prohibition to apply only to fences thereafter constructed. But construct means "to put together, as the parts of a thing, for a new product; to form with contrivance; to fabricate; to build"; and the word "shall," as a command, necessarily indicates the future as to its performance. See Worces. Dict. As the act of constructing, to which such command applied, must necessarily be in the future, the word "hereafter" would have been mere surplusage, for the construction prohibited could only occur thereafter. "It is a general rule that a statute should not be so construed as to give it a retrospect beyond the time of its commencement." Sackett v. Andross, 5 Hill, 327, 334. It may be laid down, as a fundamental rule in construing statutes so worded as to admit of a construction which would render them retrospective, as well as prospective, that a prospective operation only is to be given, unless a legislative intent to the contrary is declared, or necessarily implied from the circumstances or the language used." 23 Am. & Eng. Enc. Law, p. 448. With these well-settled rules in view, we cannot give this prohibition a retroactive effect. However wise and desirable it would have been to have prohibited the use of such wire in all fences,—those existing, as well as those subsequently created,—we cannot hold that this statute does it, for the language used indicates an intent to exclude, rather than to include, them.

We conclude, therefore, that the fence in question was not affected by the amendment of 1891. It was not, therefore, a fence prohibited by law, the defendant was not guilty of an illegal act in maintaining it, and no liability for damages can be predicated on its maintenance, as an unlawful and prohibited act. The charge of the trial judge was therefore incorrect, and for these reasons the judgment must be reversed, and a new trial granted; costs to abide the event. All concur, except LANDON, J., dissenting.