lution authorized the board to construct the building in any manner they might subsequently decide, and did not restrict them to the plans accepted at the district meeting. That case is authority here for the proposition that if the board of education exhibited the Emery plans at the district meeting as the plans of the addition which they asked authority to build, still, as the resolution passed was in general terms —i. e. "to erect an addition"—the board, in exercising the authority conferred, were not restricted to the Emery plans. That case, however, does not appear to me to be an authority for the proposition that the resolution of the district meeting in that case authorizing the construction of a new schoolhouse could have been held to authorize the alteration of the old schoolhouse, if such there were, and the expenditure in so doing of a substantial part of the appropriation.

The defendant contractors were bound to know the law, and, therefore, to know the statutory limitations upon the power of the board, and to see for themselves that the action of the board was within its powers. The contracts are entire, and are not separable, so that the work to be performed upon the addition can be severed from that to be performed in making the alterations, and the contract as to the former sustained and as to the latter alone held to be invalid.

I conclude, therefore, that the plaintiff has established his or its case. If, as claimed by the defendants, the action taken by the board in making the contracts is approved by a majority of the voters in the district, it will be an easy matter to call a special district meeting upon due notice and to pass there a proper resolution authorizing the doing of the work as proposed by these contracts and the raising of the necessary funds therefor.

The plaintiff in each case is therefore entitled to judgment substantially as demanded.

Judgments for plaintiff.

---

(57 Misc. Rep. 482.)

NEW YORK CENT. & H. R. R. CO. v. SHATTEMUC YACHT & CANOE CLUB.

(Supreme Court, Special Term, Westchester County. January, 1908.)

1. EASEMENT—CONSTRUCTION—EXTENT OF RIGHTS.

    An owner of land on the Hudson river, with a grant of outside land under water, transferred to a railroad company, the predecessor of plaintiff, a strip along the water front for its right of way by a deed conveying the fee, with a reservation to the grantor of all rights to the lands under water and privilege of constructing at the expense of the grantee culverts at designated places or at other convenient places, and the grantee conveyed back by a quitclaim deed a strip east of the strip conveyed and the description in a subsequent deed of a cross-section of 50 feet out of the parcels retained by the first owner to defendant after the conveyance to the railroad company included plaintiff's right of way strip, and the grant was subject to the rights of the railroad company. *Held*, that the grantee, a yacht club, as to such 50 feet, has the right of crossing plaintiff's intervening right of way given by the charter of plaintiff's predecessor, the original grantee, including the right to maintain gas and water pipes to connect with the clubhouse of the grantee located west of the right of way.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 97.]

2. SAME—ENFORCEMENT—INJUNCTION.

Where a yacht club owning land on one side of a railroad right of way and rights in land under water on the other side of the right of way had a right to lay and maintain gas and water pipes connected with its clubhouse located on the water side of the right of way, and the railroad company demanded as a condition precedent to laying such pipes that the yacht club execute an agreement conceding that it had no right of crossing the railroad right of way, and it refused so to do, in a suit by the railroad company to enjoin the yacht club from laying such pipes, defendant is entitled to judgment with costs, and for the amount expended in laying the pipes which the railroad company had removed, and enjoining the railroad company from interfering with defendant's rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 134.]

Action by the New York Central & Hudson River Railroad Company against the Shattemuc Yacht & Canoe Club to restrain defendant from laying water pipes across plaintiff's right of way. Judgment for defendant.

George H. Walker, for plaintiff.
Frank L. Young, for defendant.

MILLS, J. The defendant owns land upon both sides of the plaintiff's right of way strip, in the town of Ossining, for a distance of 50 feet. Its parcel on the westerly side of plaintiff's right of way, which runs approximately north and south, is of considerable depth or width, and is composed of land under water included within an old grant. Its parcel on the east of plaintiff's right of way strip is only 3 feet in depth or width, but is connected with Water street, a public highway, by a right of way 12 feet in width. Upon its westerly parcel the defendant maintains its clubhouse, and for several years, but considerably less than 20, it has had a plank crossway over plaintiff's right of way strip connecting defendant's westerly and easterly parcels, and affording, with said right of way to Water street, to defendant and its members, their only means of access from a public highway to such westerly parcel and clubhouse. Since 1890 the defendant has received its water supply by means of a pipe laid under said plank crossway. Last summer the defendant's membership and resulting needs had so increased that it imperatively needed a larger supply of water and also a supply of gas; and, for the purpose of furnishing such supplies, it was necessary for the defendant to have a larger water pipe and a gas pipe laid across plaintiff's right of way strip, so as to connect with defendant's westerly parcel and clubhouse. Defendant has no right to lay such pipe so as to connect with said parcel, except at said crossway over plaintiff's right of way. There were negotiations between the parties in which the defendant claimed the right to lay such pipes across plaintiff's right of way under said crossway; and plaintiff denied such right, and demanded that, as a condition precedent to laying said pipes, the defendant execute and deliver to plaintiff an agreement, spoken of in the proofs as its usual "crossing agreement." Defendant refused to execute the agreement because such practically conceded that defendant had no right of crossing plaintiff's right of way, but for any such crossing was dependent solely upon plaintiff's consent. Thereupon last August defendant attempted to lay the new

pipes under said crossway, and was stopped by a temporary injunction issued in this action, which was brought to enjoin the defendant from laying water or gas pipes or either of them across plaintiff's right of way. Upon the trial no controversy as to any material fact appeared.

In August, 1847, Benjamin Brandreth owned the land fronting for 2,135½ feet upon the Hudson river, with a grant of outside land under water. The plaintiff's predecessor, the Hudson River Railroad Company, laid out its railroad along substantially the water front of that tract. On the 25th of August, 1847, Brandreth conveyed to plaintiff's predecessor the land needed for its proposed right of way through said tract; the same being a strip 2,135½ feet long (running north and south) and about 74 feet in width. There is some dispute before me as to the width of the strip, which dispute I do not undertake to decide, as its solution is of no consequence here. The deed was made for a consideration of $625, and purported to convey in fee. In it, however, the grantor reserved all rights to lands under water outside of the strip conveyed, and also "the privilege of having made and constructed, at the expense of said parties of the second part (viz., plaintiff's predecessor), two culverts of the width of 12 feet each at the points designated on said map, or at such other places as may be convenient to both parties." The deed was accompanied by a map, which designated the proposed culverts. The location of neither culvert, with reference to the defendant's parcel, has been proven; but it is admitted upon both sides that neither culvert came in contact with defendant's parcels. In July, 1854, the plaintiff's predecessor, the Hudson River Railroad Company, by quitclaim deed conveyed back to the said Brandreth a narrow strip of land approximately 11 feet wide on the easterly side of the strip which Brandreth in 1847 had conveyed to the company. Through several intermediate conveyances the defendant became the owner in fee of its premises. The description in the deed to defendant includes plaintiff's right of way strip and contains the following subject clause, viz.:

"Subject, however, to the rights of the New York Central & Hudson River Railroad as used and possessed by them."

It thus appears that defendant has come to own a cross-section, 50 feet in length, out of the parcels retained by Brandreth after his conveyance to plaintiff's predecessor, which parcels were in length 2,135½ feet upon both sides of the right of way strip conveyed; or, in other words, that the defendant now owns a little less than one-fortieth in length of those parcels so retained, treating the deed by Brandreth to the company in 1847 and the deed by Brandreth back to the company in 1854 as one entire transaction.

It seems to me that the two following questions are presented for determination, viz.:

First. Has the defendant, as to its 50 feet wide parcels, the right of crossing plaintiff's intervening right of way? Second. Does such right of crossing, if it exists, include the right to lay and maintain the proposed gas and water pipes?

As to the first question, there can be no doubt that a reasonable right of crossing over plaintiff's right of way strip to and from the west

parcel to the east parcel retained by the grantor Brandreth, existed as a result of his conveyance to the plaintiff's predecessor. This right would exist upon the doctrine of necessity, aside from the provisions of the charter of plaintiff's predecessor, and aside from the provisions of Railroad Law, Laws 1890, p. 1093, c. 565, § 32. It also existed under section 16 of that charter, and that, too, without regard to the use of the lands; i. e., whether or not they were devoted to agricultural purposes. People ex rel. Frost v. N. Y. C. & H. R. R. R. Co., 168 N. Y. 187, 61 N. E. 172.

It is unnecessary to consider whether or not the dictum contained in the opinion of the Appellate Division in the First Department, in the case of New York Central & Hudson River Railroad Company v. Fielding L. Marshall, 120 App. Div. 742, 105 N. Y. Supp. 686, to the effect that section 32 of the railroad law applies only to farm lands, is correct. This right of the landowner, Brandreth, to have, and this duty of the railroad company to provide, crossings, were recognized in the deed above recited by Brandreth to plaintiff's predecessors, as appears by the reservation therein, hereinbefore recited. From such reservation in that deed, it may be inferred that the parties thereto at that time deemed the two crossings reserved sufficient for the then needs of the parcels retained by the grantor. If, owing to the changed conditions—e. g., increased use of the land due to the development of the locality—additional crossings are needed within the length of the 2,135½ feet strip conveyed, it is well settled that the court, under said section 16, can compel the railroad company, the plaintiff, to furnish them. This was distinctly held in People ex rel. Frost v. N. Y. C. & H. R. R. R. Co., supra. There is no proof before me showing the present condition of the parcels retained by Brandreth outside of the 50 feet cross-section now owned by the defendant. The defendant's claim here seems to rest upon the contention that, if said original retained tracts, bordering plaintiff's right of way for 2,135½ feet, have now become divided into any number of separate ownerships—e. g., 42 cross-sections of 50 feet in length—each owned by a separate individual, the plaintiff can be required and compelled to furnish a separate crossing between the two parcels, east and west, comprising each cross-section, or 42 separate crossings in all over the strip originally conveyed by Brandreth to plaintiff's predecessor. If this be true of cross-sections 50 feet in length, it might also be true of those 25 feet in length, and then the plaintiff might be compelled to furnish 84 separate crossings of the original Brandreth strip of 2,135½ feet in length. Plainly such a duty resting upon plaintiff might be very onerous. No direct authority sustaining this contention has been presented, and none is known to me. In this respect this case seems to be a matter of first impression. The claim here made in behalf of the defendant is that the general rule, to the effect that the duty of furnishing reasonable crossings is a continuous one varying in its requirements according to the varying conditions, requires the extreme results above stated if such conditions should arise. I am not convinced of the soundness of this reasoning, and am unwilling to accept and follow it here in the first instance. If such a conclusion be reached, I think it had better be declared by an appellate

tribunal.  Neither the plaintiff nor its predecessor is or would be in any way responsible for the subdivision of the adjoining parcels into so many small cross-sections.  While such subdivision may be a factor to be considered in determining the number of crossings now required within the 2,135½ feet of the original Brandreth strip, it does not seem to me that it should be regarded as the only or as the conclusive factor.  In short, I do not think that the naked fact that defendant's parcels constitute a portion or one cross-section of the original parcels retained by Brandreth is enough to sustain defendant's claim to a crossing.

It is contended in behalf of the defendant that, aside from section 16 of the charter of plaintiff's predecessor, and aside from the doctrine of a right of way by necessity, the defendant has a right of crossing, because the plaintiff, being a railroad company, can hold its land only for railroad purposes, although it has taken through purchase by a conveyance in fee (Saunders v. N. Y. C. & H. R. R. R. Co., 144 N. Y. 75, 86, 89, 38 N. E. 992, 26 L. R. A. 378, 43 Am. St. Rep. 729); and that the plaintiff's right of way should be regarded as a highway and the defendant, as the owner of land subject to plaintiff's rights, should be regarded as having all the rights in plaintiff's right of way strip which the owner of the servient tenement has in the premises devoted to the right of way.  Such rights are to use such premises in any way not inconsistent with the use of the right of way by the owner of the dominant tenement.  Herman v. Roberts, 119 N. Y. 37, 42, 23 N. E. 442, 7 L. R. A. 226, 16 Am. St. Rep. 800.  Even if this contention be correct, still I apprehend that the rights of the defendant, as owner of the servient tenement, would be such rights as were in the original owner thereof; or, in case such ownership had come to be in several individuals each owing a separate parcel, such rights would be in such owners collectively, and not severally.  Therefore, even upon this theory, the result would be the same, and it would not follow that the owner of each separate subdivision or cross-section of the original parcels would have the right to a separate crossing.  It does not seem that such a result could have been in the contemplation of the parties to the original deed by Brandreth to plaintiff's predecessor of the right of way strip.  The situation of such parties at the time of the conveyance must be considered, as well as the language of the conveyance, in determining its intent and effect.  Bridger v. Pierson, 45 N. Y. 601, 604.  While the evidence does not show the present condition of the parcels retained by Brandreth outside of defendant's cross-section thereof, still it appears that for many years, at least 15, the plaintiff, without objection, permitted the defendant to have and use its present crossing.  In the absence of such evidence as to the present condition of the entire original parcels, 2,135½ feet in length, it seems to me that the fact of such long user of the crossing by defendant, with plaintiff's acquiescence, warrants the finding that under the changed conditions such crossing has become reasonably necessary; and that such fact has been recognized and conceded by the plaintiff.  I conclude, therefore, that the defendant is entitled to have and use its crossing as the same now exists.

As to the second question herein involved for determination, I think that, if defendant has a right of crossing, such right includes the right of laying and maintaining the proposed gas and water pipes. Such right seems to me to be within the meaning of the terms "managing such lands" contained in said section 16 of the charter of plaintiff's predecessor. It is well established that the use which may be made of a right of way or crossing may increase or diminish with changed conditions. It is now well known that water and gas are necessary in any such structure as defendant maintains, and, indeed, in almost any building, and the right of crossing should be held to include any right of transportation not interfering with plaintiff's user. I do not perceive how defendant's pipes, if properly laid, can so interfere, or how the laying of them, if superintended by the plaintiff or performed by it at its election, can so interfere. Doubtless the defendant has the right to superintend the work, or, at its election, to do the same at the expense of the defendant, and incidentally the right to establish and enforce reasonable regulations for the doing of the work and for the maintenance of the pipes and for changes thereof which may be required by the future needs of plaintiff. The crossing agreement which plaintiff required defendant to execute went beyond the imposition of such regulations, in that it proposed to make defendant accept the pipe crossing as a privilege by plaintiff's license, and not as a right in the defendant, and also to make such privilege revokable by plaintiff at will upon 30 days' notice. Hence defendant was justified in refusing to execute the agreement.

The defendant is therefore entitled to judgment (1) dismissing the complaint with costs; and (2) upon its counterclaim, awarding to it $20 damages, its expenses in laying the pipes which plaintiff removed, and stating its rights as above defined and enjoining the plaintiff from interfering with it in the exercise thereof. The terms of the decision must be settled upon notice. Judgment accordingly.