OSCAR HUTTLINGER and HERMANN STRULLER, Doing Business as Copartners under the Firm Name of HUTTLINGER & STRULLER, Plaintiffs, *v.* ROYAL DUTCH WEST INDIA MAIL, Defendant.

Second Department, November 2, 1917.

**Ships and shipping — United States Shipping Act forbidding rebates not retroactive — statutes — construction.**

The United States Shipping Act (1916, Sess. 1, 64th Congress, chap. 451) which became effective September 7, 1916, and which, among other things, forbids a common carrier by water to pay or allow a deferred rebate to any shipper, is not retroactive and, hence, a rebate agreement entered into prior to the enactment of said statute is enforcible not being *contra bonos mores.*

An act should not be construed to be retroactive unless the language thereof renders such construction indispensable.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Edward Q. Carr* [*Lawrence S. Greenbaum* with him on the brief], for the plaintiffs.

*Ray Rood Allen* [*Norman B. Beecher* with him on the brief], for the defendant.

JENKS, P. J.:

This is a submitted controversy. The defendant agreed with the plaintiffs to pay rebates on freight carried in defendant's ships. The amount was to be determined by the charges paid between January 1st and December 31st in each year, and was to be paid on each succeeding July 1st. The rebate in question is for the year 1915. On July 1, 1916, the plaintiffs demanded payment, which was deferred by defendant until receipt of necessary information from its main office as to the correctness of the amount. Meanwhile the United States Shipping Act (1916, Sess. I, 64th Congress, chap. 451)* was passed, approved and became effective on September 7, 1916, and the defendant thereupon refused payment. The sole question presented by the parties is whether the said act makes such payment now unlawful.

The question presented by counsel is whether the said act is retroactive. The general rule that applies is well settled. MARSHALL, Ch. J., in *Reynolds* v. *McArthur* (2 Pet. 434) says that the principle " Has always been held sacred in the United States." It is that " Laws  *  *  *  look forwards, not backwards; and are never to be construed retrospectively, unless the language of the act shall render such construction indispensable." And such construction when thus required is stigmatized as " odious." (Id. See, too, Bacon Abr. Stat., cited in Sedg. Stat. Const. L. [2d ed.] 160; *Sohn* v. *Waterson,* 17 Wall. 599; *Germania Savings Bank* v. *Suspension Bridge,* 159 N. Y. 369; *Rhodes* v. *Sperry & Hutchinson Co.,* 193 id. 231; *Jacobus* v. *Colgate,* 217 id. 240, and authorities cited.) Does the language of this statute expressly, or by necessary implication, require retroactive construction in derogation of this general principle? (*Sohn* v. *Waterson, supra.*) " There is always a presumption that statutes are intended to operate prospectively only." (*City Railway Co.* v. *Citizens' Railroad Co.,* 166 U. S. 565.)

The pertinent provision of the act reads as follows: " Sec. 14. That no common carrier by water shall directly or indirectly — *First.* Pay, or allow, or enter into any combination, agreement, or understanding, express or implied,

---

* See 39 U. S. Stat. at Large, 728, chap. 451.— [REP.

to pay or allow, a deferred rebate to any shipper. The term ' deferred rebate ' in this Act means a return of any portion of the freight money by a carrier to any shipper as a consideration for the giving of all or any portion of his shipments to the same or any other carrier, or for any other purpose, the payment of which is deferred beyond the completion of the service for which it is paid, and is made only if, during both the period for which computed and the period of deferment, the shipper has complied with the terms of the rebate agreement or arrangement."* I find nothing in the language which requires that the statute must be construed as retroactive. On the contrary, the wording is entirely harmonious with the intent of a prospective enactment. The word " shall " in the expression " no common carrier by water *shall,*" etc., indicates in this instance " the simple future tense, and this must be given weight." ( *United States* v. *American Sugar Co.,* 202 U. S. 578. See, too, *Lawrence* v. *Methuen,* 187 Mass. 592, 596; *Stisser* v. *N. Y. C. & H. R. R. R. Co.,* 32 App. Div. 102.)

I think that the principle as applied in *Southwestern Coal Co.* v. *McBride* (185 U. S. 499) is pertinent to the case at bar.

The two cases cited by the learned counsel for the defendant may be discriminated from this case. It is true that in *New York Central R. R.* v. *United States, No. 2* (212 U. S. 500) the court held that the Elkins Act† applied, although the agreement was made and the goods were transported before the act went into effect, but the decision turned upon the fact that the arrangement for the rebate was illegal under the Interstate Commerce Act when the agreement was made and was executed, and the participants could have been punished therefor under that act. The court say: " Before considering the terms of the Elkins Act it is to be noted that the arrangement for the rebate was an illegal act, for which the agents of the carrier might have been criminally punished in accordance with the terms of the Interstate Commerce Act then in force. Sections 6 and 10, 25 Stat. 855.‡ The

---

* 39 U. S. Stat. at Large, 733, § 14.— [REP.

† 32 U. S. Stat. at Large, 847, chap. 708.— [REP.

‡ 24 U. S. Stat. at Large, 380, § 6, as amd. by 25 id. 855, § 1; 24 id. 382, § 10, as amd. by 25 id. 857, § 2.— [REP.

Elkins Act amended the former law by providing punishment in criminal proceedings against the corporation as well as its agents for the offense of making illegal rebates from the published tariff rates. There was then no vested right in the shipper or the carrier to have the illegal agreement consummated by the payment of the rebate arranged for. * * * The word *shall* refers to the happening of the event — the giving of the illegal rebate — and was not introduced into the statute for the purpose of making future transportation illegal. *No new legislation was required to make transportation under such an areement illegal.*" (Italics are mine.) In the case at bar we are not pointed to any law or decision that stamped the agreement illegal prior to the said act of 1916, and we cannot hold that it was *contra bonos mores*. To the contrary, section 15 of this act requires the filing of such an agreement, and then provides: "Agreements existing at the time of the organization of the board shall be lawful until disapproved by the board."* It is not shown that this agreement was disapproved by the board. The other case cited by the defendant (*Louisville & Nashville R. R. v. Mottley*, 219 U. S. 467) is not in point, for the reason that Mottley sought, under an agreement made prior to 1906, to compel the issue of passes for 1909 and every year thereafter during certain lives, in violation of the Interstate Commerce Act which became a law in 1906,† and thus to continue and to enforce that agreement in the teeth of the statute.

There must be judgment for the plaintiffs.

STAPLETON, MILLS, RICH and BLACKMAR, JJ., concurred.

Judgment for plaintiffs upon submission of controversy. Order to be settled before the presiding justice.

---

* 39 U. S. Stat. at Large, 733, 734, § 15.— [REP.

† See 34 U. S. Stat. at Large, 584, 585, § 1, amdg. 24 id. 379, § 1; 34 id. 586, 587, § 2, amdg. 24 id. 380, § 6.— [REP.