CLARENCE W. WALKER et al., Respondents-Appellants, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 48896.)

ENDICOTT NATIONAL BANK, as Executor of RAYMOND L. WINNE, Deceased, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 48897.)

Third Department, November 16, 1972.

*Becker, Card, Levy & Richards, P. C. (Bruce O. Becker* of counsel), for respondents-appellants.

*Louis J. Lefkowitz, Attorney-General (J. Lawson Brown* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

REYNOLDS, J. These are cross appeals from judgments of the Court of Claims awarding respondents Walker and Terry $20,050, plus interest, and the respondent Endicott National Bank, as executor of the last will and testament of Raymond L. Winne, $85,675, plus interest, for the taking of certain properties located in the Town of Vestal, Tioga County, New York.

The issue which the State raises in its brief on this appeal is solely the propriety of the trial court's addition of an increment for potential industrial use in valuing the property. The problem here is that the instant properties were accessible solely by easements.[1] The State urges that such easements were too limited for industrial use and could not have been improved because the railroad could not have been compelled to grant the respondents better access to their properties. The respondents assert conversely that the railroad could have been forced by the courts to improve the easement granted by section 52 of the Railroad Law so that it would be suitable for industrial use and also that in any event the record supports a finding that there was a good probability that the needed access could have been obtained

---

1. While the easement for the Winne property exists pursuant to section 52 of the Railroad Law whereas that from Walker was reserved in the deed conveying the right of way to the railroad, we see no significance in their different origins for the purposes of the instant case and, accordingly, will discuss both together as though they had originated pursuant to section 52.

from the railroad by a private agreement. Section 52 of the Railroad Law imposed a duty on the railroad to provide "farm crossings whenever and wherever reasonably necessary" for the use of property owners abutting its right of way. The initial question is whether the term "farm crossings" means only crossings necessary for farmers or farm activities or any type of crossing necessary for abutting owners including here crossings suitable for industrial access. There is authority which would suggest a strict limitation of the term "farm crossings" to crossings connected with farm property and farm related activities (*Smith* v. *New York Cent. R. R. Co.*, 235 App. Div. 262, 265; *Matter of Grade Crossing Comrs. of City of Buffalo* [*Colvin St.*], 155 App. Div. 808, 809–810, revd. on other grounds 209 N. Y. 139; *New York Cent. & Hudson Riv. R. R. Co.* v. *Marshall*, 120 App. Div. 742, 744). There are, however, other cases which cast doubt on this interpretation (*Buffalo Stone & Cement Co.* v. *Delaware, Lackawanna & Western R. R. Co.*, 130 N. Y. 152; *Clarke* v. *Rochester, Lockport & Niagara Falls R. R. Co.*, 18 Barb. 350). In *Buffalo Stone & Cement Co.* v. *Delaware, Lackawanna & Western R. R. Co.* (*supra*, p. 159) the property owner had rock quarries on a portion of his farm, and the Court of Appeals stated in rejecting the railroads' contention that it only had to construct crossings for agricultural purposes and not for the quarries: "The statute does not limit the right of adjoining owners to crossings solely for agricultural purposes, but they may be ordered to enable owners to remove the natural products of the land, like stone and minerals." Also illuminating is the Wisconsin case of *Manitowoc Clay Prod. Co.* v. *Manitowoc, Green Bay & Northwestern Ry. Co.* (135 Wis. 94) involving the construction of the Wisconsin statute requiring "farm crossings" which had been taken from section 44 of chapter 140 of the Laws of 1850 (the predecessor to section 52). The land in question was a brickyard and the Supreme Court of Wisconsin, in holding that there was a right to the crossing, said (p. 101): "The words 'farm crossings' are descriptive of the kinds of crossings required for the use of occupants of adjoining lands, as distinguished from highway crossings used in the same section and elsewhere in the statute, and railroad crossings, a term also used elsewhere in the statutes, and in respect to which different provisions are made as to their use and means of protection. The statute does not say 'for the use of occupants of adjoining farm lands', and we cannot interpret it as having that meaning." And still later (p. 104): "If this statutory requirement for crossings is to be limited

solely to farming lands, then any railroad may condemn a right of way and construct its road through property used for mining or manufacturing or lumbering purposes, however large or extensive, without furnishing or permitting a crossing over the railroad from one part to the other part of the premises. * * * We must hold, therefore, that the word 'farm' as employed in this section is descriptive of the crossing and not of the lands adjoining; that the only limitation upon the crossing is found in the words 'suitable and convenient' to be applied to its location, construction, and use as bearing upon the interests of the owner of the land and of the railroad company and of the traveling public.'' When it is considered that in 1840 when the statute was originally passed, most land was farmland and therefore it was natural for the legislators to think in terms of farmland and that the Legislature would not have intended that any lands isolated by a railroad right of way, except farmlands, would remain landlocked, the term "farm crossing" should properly be construed as including any crossing useful to the adjoining land owner.

Of course, the fact that section 52 is so construed does not mean that the courts in all cases would necessarily require a railroad to construct the particular type of crossing desired by the abutting owner. However, in the instant case the record supports the conclusion that the railroad would have been compelled to provide a crossing suitable for industrial purposes if such became necessary due to the development of the properties in question (see *People ex rel. Frost* v. *New York Cent. & Hudson Riv. R. R. Co.,* 168 N. Y. 187; *New York Cent. & Hudson Riv. R. R. Co.* v. *Shattemuc Yacht & Canoe Club,* 57 Misc. 482).

Moreover, it appears from the record that the respondents might well have obtained a private agreement with the railroad providing for better crossings. The railroad had ceased using the line in 1958 and while it would have preferred to sell its lands to a single purchaser, such as the State or a pipeline, failing that, it contemplated approaching abutting land owners to attempt to make a sale.

The finding of the trial court of a reasonable probability of industrial development is thus sustained.

Under the facts here involved, we find no merit in respondents' cross appeal for additional interest (*La Porte* v. *State of New York,* 6 N Y 2d 1). Chapter 967 of the Laws of 1971 has no retroactive effect (*Huttlinger* v. *Royal Dutch West India Mail,* 180 App. Div. 114; McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 51, subd. c) especially in the absence of language in

the statute indicating that it is to have such effect (*Hallenbeck v. Hallenbeck,* 240 App. Div. 780, affd. 264 N. Y. 445), and thus does not affect the instant case.

The judgments should be affirmed, without costs.

HERLIHY, P. J. (concurring). I concur in so much of the majority opinion as concludes that the claimants were entitled to crossing easements appropriate for industrial use of their lands and also in the result because I find that the amount of the awards would appear to be just compensation.

STALEY, JR., GREENBLOTT and SIMONS, JJ., concur with REYNOLDS, J.; HERLIHY, P. J., concurs in a separate opinion.

Judgments affirmed, without costs.