GORMAN *vs.* HAMMOND.

A part of the 8th section of the tax act of 1804, says, that "If any person" "shall be convicted of" "making a false return" of his "taxable property," "he" "shall be liable to pay to the Clerk of the inferior court of the county, a fine of ten dollars for every hundred dollars valuation so neglected or concealed."

*Held,* That this part has been repealed, and still stands repealed.

Debt from Campbell county. Decision by Judge HAMMOND, at March Term, 1859.

This was an action of debt brought by G. W. Hammond, clerk of the inferior court of said county, upon the information of Stephen Rentfroe, for the use of said county and informer, against Clayborn Gorman.

This action was brought under the 8th section of the act of 1804, for making a false return of defendant's taxable property.

The declaration alleges that defendant gave in his lands to the receiver of tax returns, worth twelve thousand, at eight thousand six hundred dollars—that he gave in his negroes, worth twenty-five thousand dollars, at ten thousand dollars.

Defendant demurred to the declaration upon the following grounds:

1st. That there was no law authorizing said suit or action.

2d. That the declaration does not allege that defendant failed to return all of his taxable property; nor does it show what property was withheld.

3d. That the cause of action was barred by the statute of limitations, especially that portion relating to the return of 1857.

4th. That there was no order or authority from the inferior court of said county, to institute said action.

The court overruled the demurrer on all the grounds, except that part of the third ground, relating to the return of 1857, which was sustained. The court holding that the action as to that year was barred by the statute of limitations. And to this decision defendant excepted.

STONE & FITCH, and TIDWELL, for plaintiff in error.

BLALOCK, contra.

Judge McDONALD did not preside in this case, being absent on account of indisposition.

*By the Court.*—BENNING, J., delivering the opinion.

Ought the court below to have sustained the demurrer to the declaration?

The first ground of the demurrer, was, "that there was no law authorizing said suit or action. Was that a good ground?

The action is founded on a part of the eighth section of the tax act of 1804. That section is as follows:

"*If any person or persons*, shall neglect or refuse to give in a return of his, her or their taxable property, or *shall be convicted of* fraud or *making a false return thereof*, he, she

*or they shall be liable to pay to the clerk of the inferior court of the county, a fine of ten dollars, for every hundred dollars valuation so neglected or concealed, one-half whereof for the use of the county, under the direction of the inferior court, and the other half for the use of the informer or informers, to be recovered in any court having cognizance of the same.* (Cobb Dig. 1047.) The part of the section on which the action is founded, is that part which I have put in italics.

The ground of the demurrer, therefore, amounts to this: that this part "was no law"; in other words, that this part had been repealed. Is that so? Has it been repealed?

It was argued that it was repealed by a part of the fourth section of the tax act of 1845. That section is as follows: "If any person shall fail to make a return of taxable property under this act, such persons shall be doubly taxed for the first year, trebly taxed for the second year, and increasing in the same ratio each year, until a return is made; *and if any person make a false or partial return, a double tax shall be assessed by the justices of the inferior court of the county in which such false or partial return is made, or [on] report of such fact to them by the receiver of tax returns, and at least three day's notice to such person, by order of the justices of said county.* (Cobb, 1076.) The part of the section meant, was the part which I have put in italics.

Does this part of the act of 1845, repeal the part aforeforesaid of the act of 1804?

Both of the two parts prescribe a penalty for the same act—"*a false return*" "*of taxable property;*" and the penalty prescribed by the one, is not the same as that prescribed by the other; and, it is a rule, that when there are two statutes imposing a penalty, for the same offence, and the penalty imposed by the one is not the same as that imposed by the other, the later statute repeals the earlier—the intention to inflict two punishments for the same of-

fence, being a thing not to be imputed to the legislature. Therefore, the part of the act of 1845, *does* repeal the part of the earlier act of 1804.

That part of the act of 1804, having been thus repealed, has it remained repealed ? It has, of course, unless it has been revived by some act subsequent to the act of 1845. Is there any such act that revived it ? If there is, we may safely assume that it was some of the tax acts. Is there any tax act that revived it ?

The first tax act, after the act of 1845, is the tax act of 1847. That act revives the tax act of 1845—the repealing act. Of course, therefore, that act does not revive the part of the act of 1804, but keeps it repealed. (Cobb, 1078.)

The next tax act is that of 1850. That act re-enacts the act of 1847, "for the political years 1850 and 1851, and for each year thereafter, until repealed." That act, therefore, revives, or rather, keeps alive the act of 1845, and makes it perpetual, and consequently it, instead of reviving the part of the act of 1804, renders its state of repeal indefinite.

The next tax act is that of 1852. That act does not contain any provision on the subject of the "*false* return" of taxable property. Therefore, it does not contain any provision against which the part of the act of 1845, revived and made perpetual as aforesaid by the act of 1850, could militate—that part relating exclusively to "a false return" of taxable property. And the repealing clause of the act of 1852, is as follows : "That all laws and parts of laws militating against this act, except such part of the tax acts now in force in this State, as may be necessary to carry out this act, and which are declared in full force, be and the same are hereby repealed." (Acts 1851–'52, 292.) Consequently, as the part aforesaid of the act of 1845, revived and made perpetual as aforesaid, by the act of 1850, does. not militate against it, that part is not re-

Gorman vs. Hammond.

pealed by it.    And, therefore, the part of the act of 1804, is not revived by it.

The next tax act is that of 1854.    This continues in force all of the act of 1852, except its 12th and 15th sections, which two it alters, but not so as to make them conflicting with the part aforesaid of the act of 1845. Hence, this act could not revive the part of the act of 1804.

I remark, that even if the part of the act of 1845, militated against either the act of 1854, or the act of 1852, and was, therefore, repealed by either of those acts, the part of the act of 1804, equally did so, and therefore, that such repeal of the part of the act of 1845, could not operate to revive the part of the act of 1804.

Neither in 1856, nor in 1857, was there any general tax law passed.    In each of those years, a few unimportant acts bearing on subjects connected with taxation, were passed, but not one of such acts contained any provision on the subject of the "false return" of taxable property. None of these acts, then, could revive the part aforesaid of the act of 1804.

Thus far, then, there is no act to be found which repeals the part of the act of 1845, which repeals the part of the act of 1804, and, consequently, no act which revives the part of the act of 1804.

The next and last act was that of 1858, to make the receivers of tax returns assessors in certain cases.    The first two sections of that act are as follows:

"That from and immediately after passage of this act, it shall be the duty of each receiver of tax returns in the several counties of this State, to examine carefully each return presented to him ; and if in his judgment he shall find the property embraced in said return, returned below the value thereof, it shall be his duty to assess the value thereon."

"That in case the individual making such return, shall

consider the assessment made by the receiver too large, he shall be permitted to leave it to three disinterested persons, one of whom he shall select, and the receiver shall select one, and these two shall select a third party, a majority of whom shall determine the amount of assessment on the property embraced in each return." (Briscoe's Dig. of Tax Laws, 30.)

These sections are on the subject of "the false return" of taxable property, for, a return of taxable property, "below the value thereof" is a false return; and the penalty which they impose, is different from that imposed by the act of 1845, and probably, less than that. The penalty they impose is an assessment by the tax receiver, subject to be revised by arbitrators, at the option of the person making the return. The penalty imposed by the act of 1845, was a double tax assessed by the inferior court, on three days' notice to the person making the false return. It would seem, then, that they repeal the act of 1845. But if they do, they equally keep the act of 1804, in a state of repeal; for the punishment they inflict, differs more from the punisment inflicted by that act, than it does from the punishment inflicted by the act of 1845. Therefore, if they suffice to repeal the act of 1845, much more must they suffice to keep the act of 1804 repealed.

Even if the act of 1804 had been in force, this act of 1858 would itself have repealed it; and that repeal would alone—though coming so late—have defeated this action. It would have taken from under the action its foundation. (See Bank of St. Mary's vs. Clayton, 12 Ga.)

Thus, then, it appears, that there is no act which revives the part of the act of 1804, giving the present action. It is not pretended that if this part of the act of 1804, does not give the action, there is anything that does. Consequently, it must follow that this first ground of the motion to dismiss this action was good, viz: the ground that there was no law authorizing the action.

Gorman vs. Hammond.

Now, what is there contrary to this conclusion? A decision of this court, it is said—the decision in Payne vs. Coursey. (20 Ga. 585.) Even if that were true, the effect would be to show not the conclusion, but the decision erroneous. But is it true? We think not. In that case, it is true that the declaration was just like it is in the present case; and, that the decision of this court was that the action lay; but it is not true, that the question on which that decision was made is the same as the question on which the decision in this case is to be made. The question in this case is, whether the part of the statute on which both actions were brought, is in force; in that case, it was assumed on both sides, that the part of the statute was in force; and that the only question made, was, whether it, thus taken to be in force, had been followed by the declaration—whether in other words—the declaration was such as to bring the case within this part of the statute. This part says, it will be remembered, that, if any person shall be *convicted* of making a false return of his taxable property he shall be liable to pay a fine of ten dollars, &c. The defendant's point was, that as the declaration failed to allege that he had been *convicted* of making such false return, the declaration failed to bring the case within this part of the statute; and, therefore, that the declaration was insufficient, judged by the part of the statute itself. And a plausible point it was. He did not insist that the statute had been repealed. He assumed that it had not been, for he relied on it himself, his point being that the statute itself required a conviction as a prerequisite to the action. The decision of this court was that the action lay; but that was merely saying that the objection made to its lying was not good—was merely saying that it was not true; that the statute itself made a conviction, a prerequisite of the action. Every decision—every book— every writing—every discourse—is to be taken in reference to the facts on which it is made. That the question

Gorman vs. Hammond.

was what I have stated that it was, is sufficiently apparent from the facts of the case, as reported. "At the trial, counsel for defendant moved the court to dismiss the action, on the ground that the same cannot be maintained · under the law and the pleadings." (20 Ga. 586.) What is this but saying that the ground of the objection was that the relation borne by the *pleadings* to the *law* was such that the action was not maintainable? And what pleadings and what law were obviously meant? The declaration, and the law on which the declaration was founded, viz : the part aforesaid of the 8th section of the act of 1804. What relation between these was meant? The relation growing out of the absence from the declaration of an allegation that the defendant had been *"convicted"* of making the false return charged against him—this part of the section declaring, that if any person should be *"convicted"* of such a false return he should be "liable" to the action. The decision of this court was, that the defendant was liable to the action— this objection to the contrary notwithstanding. That is all. It is true that the court, in delivering judgment, uses this language : "By the 8th section of the tax act of 1804, which is perpetuated by subsequent statutes," &c.; and thus, incidentally assumes that the section is still in force. But was that strange when the counsel on both sides had assumed that it was in force—the counsel for the plaintiff insisting that it sustained his declaration ; counsel for the defendant insisting that it sustained his demurrer? And it may be right to say, that if any blame is imputable to the court for being seduced into this assumption, it is a blame to be borne by me and Judge Lumpkin ; for Judge McDonald did not preside in the case—ill health preventing him from attending the Court at the term at which the case was decided.

We think, then, that this ground of the motion was good. We think that the part of the 8th section of the

tax act of 1804, on which part the action is founded, is not in force. Holding this ground to be good, it is needless to consider the other ground. Therefore, we leave them without giving them further notice.

Judgment reversed.