Cooeey, Ch. J.:
The action below was brought by the defendants in error to recover the expense of constructing a bridge on Portage street, in the village of Kalamazoo, over a race cut in or about the year 1840 to conduct water to the mill owned and operated by the plaintiffs in error. The race appears to have been bridged from the first, and the bridge in question was constructed by the village authorities in the place of the one which they claimed had become unfit for use. Before constructing it they had notified the mill-owners to do so, furnishing them with the specifications, which were for a bridge of wood, thirty feet m width; but this notice was disregarded. In the court below judgment was recovered for the full cost of the bridge.
I. It is objected to the recovery that the suit should have been brought in the corporate.name of the village. Such is the general rule undoubtedly, but it is competent by statute to make exceptions, and for this case I think one has been made. The village charter of 1861 provided that “ the president and trustees shall be commissioners of streets and highways, and within the limits of the village shall have the same powers and perform the same duties as now belong to commissioners of streets and highways in the several townships of the state,” etc. — Laws 1861, p. JflO, § 26. *This was amended in 1861, but the substance was retained. It clearly, I think, draws a distinction between the board in its legislative capacity and the members of the board acting ex offieio m another capacity, and makes their title of office different in the two cases. Among the powers possessed by highway commissioners of townships is that of bringing suit in their name of office against parties neglecting to build and maintain bridges over their mill-races crossing highways; and the members of this board would not possess “the same powers ” unless they were authorized to bring the like suits.
*204 But in my opinion the present suit is misconceived. The powers conferred upon the president and trustees as commissioners of highways are given to them as individual officers and not as a corporate body, and the suit should have been brought by them in their name of office as commissioners, and not in their name as a common council, which for this purpose they are not. But as this was only a misnomer, an amendment might have been allowed to cure it.
II. It was insisted that the action could not be sustained because the power over bridges was conferred upon the board to be exercised by ordinance; and it was not pretended that any ordinance applicable to the case had ever been adopted. This objection is based upon section seven of the charter, which provides, among other things, that “the president and trustees shall have power to ordain and establish by-laws, rules, and regulations, and the same to alter and repeal at pleasure, for the following purposes, viz.: * * * . * to construct and keep in repair the public highways, bridges, culverts and sewers.” — JLavis 1869, p. 816-8, Yol. This language, I think, applies to the highways, bridges, culverts, and sewers which are to be constructed and kept in repair by the village itself through the exercise of the taxing power, and does not necessarily embrace the case of bridges which it is the duty of private parties as proprietors of mills to construct, and the construction of which is supposed to be sufficiently provided for by general law. Such bridges are ^indeed public in the sense that they are for the public use; but in whatever pertains to their construction they* are private, and are provided for as such. Ordinances for their construction and repair are no more needed within an incorporated village than elsewhere, and it is not likely the legislature had them in mind when the charter was framed. Such charters are to be construed as not designed to encroach upon the general law any farther than the plain terms show an intent to do so; and in this case I discover no such intent.' The same section also authorizes ordinances “to regulate the covering of mill-races at the expense of the owners thereof;” but this evidently refers *205 to the requirement of covering as a police arrangement, and not to bridging.
III. It was also insisted that the mill-owners were under no obligation to construct a bridge of the dimensions of the one in controversy; and this position I think is unanswerable. The statute, which is given in full in the margin] †(OComp. X., §§ 1309, 1310), requires the mill-owners to construct “ a good and sufficient bridge or bridges not less than fourteen feet in width,” and empowers the commissioners to build at their expense, in case they “ shall refuse or neglect to make such bridge or bridges.” It is manifest that under this statute the mill-owners would have performed their legal duty had they constructed a suitable bridge of *the width of fourteen feet; and ‘failing in that the commissioners are only to discharge the unperformed duty at their expense; The requirement to build a bridge of thirty feet was unwarranted.
It may be said with perfect truth that a bridge of fourteen feet on a prominent street in a village of 12,000 people is very inadequate for the accommodation of public travel, and that this fact furnishes an argument against the construction which is here given to the statute. But it is also true that village authorities are not obliged to suffer their streets to be cut for water-ways, and that they may require reasonable conditions to their assent. If, however, the race is cut before the village is in existence, or while it is still insignificant, and the necessity for a more extended structure than that provided for by the *206 statute is created by the subsequent and perhaps unexpected growth of the place in population, it may be, and probably would generally be, more just that the public should bear a portion of the expense than that the whole burden of constructing and maintaining an expensive bridge should be cast upon the mill-owner. But whether the statute prescribes a strictly just rule or not, it is plain to my mind that it has fixed a limit to the mill-owner’s liability, and that he may discharge himself by constructing a bridge fourteen feet in width. It is only in default of the mill-owner constructing a good and sufficient bridge of at least fourteen feet in width that the highway commissioners are empowered to act at all, and when they do act, it is not to make plans and specifications of such a bridge as in their discretion they might determine to be suita.ble and proper under the circumstances, and to charge the mill-owner with the cost thereof, but it is to construct at his expense such a bridge as would answer the terms of his legal liability. As the statute has not required of the mill-owner a structure more than fourteen feet in width, neither can the commissioners do so. If they construct one of greater dimensions, 'all they can collect from him is the damages sustained by reason of his failure to perform *his duty.
And as already seen, this duty, so far as it is made compulsory by the statute, is limited to a bridge of fourteen feet in width. He may build as much wider as he shall choose, but he must build to that width or be held responsible.
IY. Defendants below also insisted that the statute under which the suit was brought, and which has already been given, was not applicable to their case, it having been passed in 1855,. some fifteen years after the race was cut. This argument is drawn from the general rule that statutes are not to receive a retrospective construction unless their language plainly requires it. — Sedgw. Stat. and Const. L., 188; Cooley’s Const Lim., 3.70. But in my opinion the statute is not given retrospective operation when applied to such a case. It is the duty of mill-owners to bridge their races where they cross highways, independent of any statute. — 1 Rol. Abr., 368; Tit. “Bridges ” PL, 2; Rex v. Inhab. of West Riding, 5 Burr., 2594, 2597; Same *207 v. Same, 2 East., 342, 350; Perley v. Chandler, 6 Mass., 453, 458; Heacock v. Sherman, 14 Wend., 58, 60. There is consequently no new duty imposed when the statute provides that where a race crosses a public highway the owner of the mill shall bridge it. The statute only gives an efficient remedy for a duty which existed before, and in doing so it has no retroactive operation. It recognizes an existing duty, and provides how for the future its performance may be compelled.
V. Several questions were made on the admission of evidence to prove the existence of the road before the race was constructed. The most of these appear to me to call for no remark. It appears to have been claimed that the road had become a public way by use or dedication before May, 1833, and in that month the township commissioners of highways caused it to be surveyed and recorded under the territorial laws (Laws 1883, p. 102) as an existing road. Such a record, it is justly said, would not establish a road; but it would become a permanent record of the line where *the road was established by other evidence. There was some considerable controversy over the question of an abandonment and re-establishment of the road, and some exceptions are based on the rulings of the court on that subject. If the road was not abandoned at the point where it crossed the race, the questions raised were immaterial. Variations in the line at other points would not proelude the right of the public to insist upon the public way at this point, or affect in any manner the duty of the mill-owners to keep the race bridged for public use.
VI. It is somewhat doubtful if there was any evidence in the case upon which the court could properly have been asked to charge that ‘ if at the time the race was dug there was no traveled road within the limits of the present highway at the point where the race crosses the road, then the plaintiffs cannot recover;” but if there was, he should have charged as requested.
The judgment must be reversed, with costs, and a new trial ordered.
Graves and Marston, JJ. concurred.
*208 Campbell, J.:
I have not been satisfied that the statutory action for the non-erection of bridges over mill-races applies in the village of Kalamazoo. Under the' amended charter the powers over roads, bridges, and mill-races are so differently regulated from any thing in the townships, that the charter provisions making the powers of the village authorities as highway commissioners include those of commissioners generally, “as far as applicable,” as.it seems to me, exclude the anology where, as in this case, it cannot be applied without confusion. I think the entire control of the covering of mill-races and the regulation of highways and bridges, under the powers contained in the charter, inconsistent with the idea that they should be managed except under the same system of by-laws and ordinances there required for kindred subjects.
*lf the statutory obligation exists and can be enforced by action, I agree that it does not require a bridge beyond fourteen feet in width, nor one beyond what is reasonably required. The establishment of a wider one cannot render the mill-owner liable to pay for it.
I agree, therefore, in reversing the judgment.

 “ (1309) Section 1. The People of the State of Michigan enact, That it shall he the duty of all owners, occupiers or possessors of mills or other water-works, where any race or races appertaining to the same may cross a public highway, to keep a good and sufficient bridge or bridges, not less, than fourteen feet in width, with a subsiantial railing on each .side thereof, over the same, except where said mills have been erected and the races dug prfevious to the formation of said highway.
“ (1310) Sec. 2. In all cases where the owner or owners, occupiers or possessors of any such mill or mills, or other water-works, shall refuse or neglect to make such bridge or bridges, or shall refuse or neglect to keep the same in good repair, it shall be the duty of the commissioners of high-. ways of the township in which such highway may be, to proceed forthwith to erect or repair such bridge or bridges at the expense of the person or persons whose duty it was to have erected or repaired such bridges.”