PEOPLE *v.* LOWELL.

1. STATUTES—CRIMINAL LAW—SECTION INCREASING PENALTY REPEALS FORMER SECTION.

Where an act amends a former act by increasing the penalty for an offense, the effect of enacting the increased penalty is to repeal the earlier provision unless there is a saving clause.

2. SAME—PROHIBITION LAW—PENAL PROVISION REPEALED BY AMENDING SECTION—SAVING CLAUSE.

The penal provisions of the prohibition law, Act No. 338, Pub. Acts 1917, amended by Act No. 114, Pub. Acts 1929, §§ 2, 51, 51a, creating new offenses and increasing the penalties, were repealed by the enactment of the amending statute without a saving clause.

3. SAME—REPEAL OPERATES FROM MOMENT IT TAKES EFFECT.

In absence of a saving clause, repeal of a criminal statute operates from the moment it takes effect to defeat all pending prosecutions under the repealed statute.

4. SAME—AMENDATORY ACT HAS REPEALING FORCE DIFFERENT FROM INDEPENDENT STATUTE.

An amendatory act has a repealing force, by the mechanics of legislation, different from that of an independent statute; repugnancy not being essential element of implied repeal of specifically amended sections.

5. SAME—ORIGINAL SECTION CEASES TO EXIST AFTER BEING AMENDED.

Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there.

6. SAME—WHEN SECTION REPEALED.

Where an act or portion of an act is amended ''so as to read'' in a prescribed way, the section amended is entirely repealed and obliterated thereby.

As to effect of repeal with saving clause, of penal statute or ordinance, upon prior conviction under it, see annotation in 23 L. R. A. (N. S.) 243.

7. SAME—MATTERS CARRIED OVER INTO NEW ACT HAVE FORCE FROM NEW ACT.

It is established rule of amendatory acts that former provisions incorporated in new act are deemed continued rather than repealed and enacted anew, so that matters carried over, although not new legislation, have their force from the new act, and not from the former.

8. SAME—EXPRESS REPEAL—IMPLIED REPEAL.

An express repeal has no more force than an implied repeal.

9. SAME—LEGISLATIVE INTENT MUST BE EXPRESSED.

Legislative intention not appropriately expressed has no legal existence.

10. SAME—CONSTRUCTION—LEGISLATIVE KNOWLEDGE PRESUMED.

The legislature is presumed to know the principles of statutory construction.

11. SAME—COURT MUST NOT DEPART FROM EXPLICIT DECLARATION OF LEGISLATURE.

Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it.

12. SAME—ABROGATION OF RULE NOT WARRANTED BY PRINCIPLES OF SOCIOLOGY.

No principle of sociology would warrant abrogation of a rule upon which legislation has been enacted and construed since the establishment of the State, because, in a few instances, misfortune follows, not its observance, but its disregard.

13. SAME—CONSTITUTIONAL LAW—COURTS WITHOUT POWER TO CORRECT LEGISLATIVE MISTAKES.

No principle of sociology can confer upon the court legislative power to correct mistakes in unambiguous laws.

BUTZEL and SHARPE, JJ., dissenting.

Error to Kent; Dunham (Major L.), J. Submitted January 16, 1930. (Docket No. 148, Calendar No. 34,705.) Decided April 7, 1930.

Mary Lowell and Floyd Lowell were charged with violation of Act No. 338, Pub. Acts 1917. From

orders discharging defendants, the people bring error. Affirmed.

*Wilber M. Brucker,* Attorney General, *Bartel J. Jonkman,* Prosecuting Attorney, and *Arthur R. Sherk,* Assistant Prosecuting Attorney, for the people.

*Wetmore & Bagley,* for defendants.

Fead, J. Act No. 114, Pub. Acts 1929, amends sections 2 and 51 of the prohibition law, Act No. 338, Pub. Acts 1917, and amendments, and adds section 51a, "Said amended sections and added section to read as follows:"

Section 2 of Act No. 114 defines the offenses. In identical language it includes those defined in section 2 of Act No. 338, and makes no change in the section except to add four new offenses, "manufacture for sale," "import for sale," "transport for sale," and "possess for sale."

Section 51 of Act No. 114 amends penal section 51 of Act No. 338 by increasing the maximum penalties from $1,000 fine and one year imprisonment to $2,000 fine and two years imprisonment, in the discretion of the court. Section 51a is new and provides a specific penalty for sales, before punishable under section 51, and for the new offenses created by Act No. 114, of a maximum fine of $2,000 and imprisonment of not less than one year nor more than four years. Act No. 114 took effect August 28, 1929. It contains no repealing clause nor saving clause.

After August 28th, the examining magistrate made return binding defendants over for trial in the circuit court on charges of violation of the prohibition law committed prior to that date. They

moved to quash the complaint and for discharge on the ground that Act No. 114 had repealed section 51 of Act No. 338, and that there was no penal provision under which they could be punished. The court held with defendants, and the people have appealed.

The ruling of the circuit court is sustained by *People* v. *Hiller,* 113 Mich. 209, in point, where this court said:

"We understand the rule to be, in criminal cases, in the absence of a saving clause, that where the penalty is altered in degree, but not in kind, by increasing the punishment which may be imposed, the effect of enacting the increased penalty is to repeal the earlier provision."

The rule is supported by authority in this country and England, unanimously in amendatory acts like that at bar so far as we can discover, except in *State* v. *Broadway,* 157 N. C. 598 (72 S. E. 987). So unequivocally and completely established in the jurisprudence of this country is the rule that, to avoid its operation through inadvertence, the Federal government and many of the States have deemed it necessary to enact general saving clauses by constitution or statute. The adoption of these clauses has resulted in a paucity of late authorities, but where they have not been enacted the rule still obtains. Some of the authorities declaring it are: 1 Lewis' Sutherland Statutory Construction (2d Ed.); § 252; Maxwell on Interpretation of Statutes (6th Ed. Eng.), p. 332; Brill Cyclopedia Criminal Law, § 78; Smith's Commentaries on Statutory and Constitutional Construction, § 776; 36 Cyc. pp. 1096, 1230; 25 R. C. L. pp. 930, 931; 88 Am. St. Rep. 292, note; *United States* v. *Tynen,* 11 Wall. (U. S.) 88; *In re Medley,* 134 U. S. 160 (10 Sup. Ct. 384);

*United States* v. *Yuginovich,* 256 U. S. 450 (41 Sup. Ct. 551); *State* v. *McDonald,* 20 Minn. 136 (Gil. 119); *State* v. *Smith,* 56 Ore. 21 (107 Pac. 980); *Flaherty* v. *Thomas,* 12 Allen (Mass.), 428; *Commonwealth* v. *Kimball,* 38 Mass. (21 Pick.) 373; *Nichols* v. *Squire,* 5 Pick. (22 Mass.) 168; *State* v. *Smith,* 44 Tex. 443; *Sugg* v. *Smith* (Tex. Civ. App. [May 1918]), 205 S. W. 363; *State* v. *Dixie Finance Co.,* 152 Tenn. 306 (278 S. W. 59); *State* v. *McClellan* (1923), 155 La. 37 (98 South. 748, 31 A. L. R. 527); *Gorman* v. *Hammond,* 28 Ga. 85; *Garvey* v. *People,* 6 Col. 559 (45 Am. Rep. 531); *Carter* v. *Hawley* (Ohio), Wright (2d Ed.), 74; *State* v. *Campbell,* 44 Wis. 529; *United States* v. *One Bay State Roadster* (D. C.), 2 Fed. (2d) 616. See, also, *Engle* v. *Shurts,* 1 Mich. 150; *Leighton* v. *Walker,* 9 N. H. 59; *Buckallew* v. *Ackerman,* 8 N. J. L. (3 Halst.) 48.

In the absence of a saving clause, the repeal of a criminal statute operates from the moment it takes effect, to defeat all pending prosecutions under the repealed statute. *People* v. *Hiller, supra;* 1 Lewis' Sutherland Statutory Construction (2d Ed.), § 286; 36 Cyc. p. 1230; 23 L. R. A. (N. S.) 243, note; *Aaron* v. *State,* 40 Ala. 307; *State* v. *Daley,* 29 Conn. 272; *Hartung* v. *People,* 22 N. Y. 95; *Higginbotham* v. *State,* 19 Fla. 557; *Keller* v. *State,* 12 Md. 322 (71 Am. Dec. 596).

Mr. Justice Butzel recognizes the practical unanimity of authority but advances reasons for disregarding the settled rule. We will pursue the subject further.

It must be appreciated and kept in mind that we are here concerned with an act which specifically amends a designated section of a general act "to read as follows." We are not dealing with inde-

pendent and distinct statutes, as in *Re Lambrecht*, 137 Mich. 450, in which the rule of implied repeal is such irreconcilable repugnance that both cannot stand. In such case, if the new statute is given a purely prospective effect and the former is made retrospective, they are not irreconcilable. The rule governing such cases is well recognized. 16 C. J. p. 69; 1 Lewis' Sutherland Statutory Construction (2d Ed.), § 252; *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505); *Porter* v. *Edwards,* 114 Mich. 640; *People* v. *Hobson,* 48 Mich. 27.

An amendatory act has a repealing force, by the mechanics of legislation, different from that of an independent statute. Repugnancy is not the essential element of implied repeal of specifically amended sections. The rule is:

"Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there." 25 R. C. L. p. 907.

The new section takes the place of the old section in the original act. *Webster* v. *Auditor General,* 121 Mich. 668. It obliterates from the law not merely what is repugnant in the old section, but everything in such section which does not appear in the new act.

The rule settled in this State, and upon which *People* v. *Hiller* rested, is, as quoted in *City of Mason* v. *Railway Co.,* 157 Mich. 1, 13, 14:

" 'Where an act or portion of an act is amended "so as to read" in a prescribed way, it has been said that the section amended is entirely repealed and obliterated thereby. It is perfectly clear that, as to all matters contained in the original enactment, and not incorporated in the amendment, the latter must be held to have the effect of a repeal.' "

In that case, and also in *Detroit United Railway* v. *Barnes Paper Co.,* 172 Mich. 586, to the same effect, *People* v. *Hiller* was cited with approval. See, also, *People, ex rel. Flint, etc., R. Co.* v. *County Treasurer of Saginaw,* 32 Mich. 260; *Breitung* v. *Lindauer,* 37 Mich. 217; *Boughner* v. *City of Bay City,* 156 Mich. 193; 36 Cyc. p. 1083; Brill Cyclopedia Criminal Law, § 29; Black Interpretation of Laws, p. 359; 1 Lewis' Sutherland Statutory Construction (2d Ed.), §§ 237, 238; 11 Ann. Cases, 472, note; *City of Chicago* v. *Foley,* 335 Ill. 584 (167 N. E. 779); *Forbes* v. *Board of Health,* 27 Fla. 189 (9 South. 446, 26 Am. St. Rep. 63); *Continental Oil Co.* v. *Montana Concrete Co.,* 63 Mont. 223 (207 Pac. 116); *State* v. *District Court,* 134 Minn. 131 (158 N. W. 798); *Gibson* v. *Commonwealth,* 209 Ky. 101 (272 S. W. 43).

There is no inconsistency between the rule in the *Hiller Case* and that in *People* v. *Schoenberg,* 161 Mich. 88, and *Sage* v. *State,* 127 Ind. 15 (26 N. E. 667), which involved amendatory acts. In those cases the offenses and penalties as stated in the amended statutes were incorporated unchanged in the amendatory acts. It is an established rule of amendatory acts that former provisions incorporated in the new act are deemed continued rather than repealed and enacted anew. 1 Lewis' Sutherland Statutory Construction, § 251; 11 Ann. Cases, 472, note; *Merkle* v. *Bennington,* 68 Mich. 133. This is because the Constitution requires the amendatory act to set up the whole section as amended. Matters carried over are not new legislation. Nevertheless, the old section is deemed stricken from the law, and the provisions carried over have their force from the new act, not from the former. 1 Lewis' Sutherland Statutory Construction (2d Ed.), § 237.

It is plain from the authorities in this State and elsewhere that the effect of an act amending a specific section of a former act, in the absence of a saving clause, is to strike the former section from the law, obliterate it entirely and substitute the new section in its place. This effect is not an arbitrary rule adopted by the courts. It is the natural and logical effect of an amendment "to read as follows." It accomplishes precisely what the words import. Any other construction would do violence to the plain language of the legislature.

From a legal standpoint, the argument against the rule is that used in *State* v. *Broadway, supra,* and repeated in *Cisson* v. *United States* (South Carolina), C. C. A., 4th Circuit, January 14, 1930, 37 Fed. (2d) 330, to the effect that the question of implied repeal rests upon the intention of the legislature and that increase in punishment provided in the new act indicates an intention of the legislature not to grant amnesty to prior offenders, but rather to apply the new act to subsequent offenses and to continue the former law in force to cover violations committed before the new act took effect. The identical argument was made in *People* v. *Hiller, supra,* and rejected by this court. In *State* v. *Broadway, supra,* the court cited *State* v. *Massey,* 97 N. C. 465 (2 S. E. 445), in which it was held that, by virtue of a general statute of the State, an amendatory law did not repeal an amended section in the absence of an express repealing clause. In this respect that court had the virtue of consistency with its own statute law in reaching its conclusion. As we have seen, the rule is contrary to the established law of this State.

*Cisson* v. *United States* involved the Jones act, 45 U. S. Statutes at Large, p. 1446, chap. 473 (27

USCA §§ 91, 92), which it was contended had repealed the penalty clause of the National prohibition act as to second offenses, by increasing the punishment. The court held the Jones act prospective in operation, and adopted the reasoning of and cited *State* v. *Broadway, supra.* Aside from the effect of the Federal general saving clause, which the court failed to mention, 1 USCA § 29, the case is not authority here because:

1. The Jones act did not amend any specific section of the National prohibition act. In effect, it was a separate statute from the general penalty clause, as section 51a at bar is from former section 51, and repugnancy was the test of an implied repeal properly applicable to it. The instant case would be amenable to much different considerations if section 51 had not been amended.

2. The Jones act specifically provided that it did not repeal or eliminate any minimum penalty already established in the National prohibition act, thereby expressing in the law itself an intention to continue the former clause in effect except as to repugnancy.

In holding that implied repeal may be avoided by giving Act No. 114 a prospective effect, Mr. Justice BUTZEL applies the rule of independent statutes to amendatory acts. The distinction has been pointed out herein and was recognized in *Mongeon* v. *People,* 55 N. Y. 613, 618, which he cites:

"*Hartung* v. *People* (22 N. Y. 95), was still fresh in the recollection of legislators, in which it was held that by a change in the law defining the crime and providing for the punishment of murder—effected by an amendment of the prior law instead of, as in this case, by a new statute applicable only to future offenses—the prior law had been abrogated,

and persons although convicted under it could not be punished.''

The people have somewhat stressed the absence of a repealing clause. An express repeal has no more force than an implied repeal, and their contentions would be as applicable to one as the other.

This brings us to the crux of the whole argument against repeal, the claimed intention of the legislature.

''A legislative intention not expressed in some appropriate manner has no legal existence.'' 2 Lewis' Sutherland Statutory Construction (2d Ed.), p. 745.

''The legislature is also presumed to know the principles of statutory construction.'' *Ibid,* 929.

''There are acknowledged rules for ascertaining that intention'' of the legislature. *United States* v. *Claflin,* 97 U. S. 546, 551.

Nowhere in the act did the legislature, by words or in the manner provided by any rule of construction, express an intention to save the prosecution of former offenses. On the contrary, both by the natural meaning of the language used and in accordance with acknowledged and long-established rules with which it was presumably familiar, it affirmatively and appropriately expressed an intention to obliterate the amended section. A contrary conclusion is private speculation, not judicial construction.

''The result may or may not be conformable to the actual intent of those who passed the latter statute. We can only ascertain the legal intent of the legislature, by the language which they have used, applied and expounded conformably to the settled and well-known rules of construction.'' *Commonwealth* v. *Kimball,* 21 Pick. (38 Mass.) 373.

"Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it." Black on Interpretation of Laws, p. 36.

If we disregard the rules of construction and the language of the act to enter the field of pure speculation, we find, not merely as a presumption but as a demonstrable fact, that the legislature of 1929 knew the necessity and understood the effect of a saving clause. Not only did it insert such clause in several criminal laws adopted at the same session, but it also appears that after both houses had passed a capital punishment bill for murder and sent it to the governor for approval, the legislature had it returned for the sole and express purpose of inserting a saving clause in it. House Journal 1929, p. 1261.

At bottom, the argument against repeal is sociological rather than legal, that the effect of repeal will be injurious to the public welfare, in excusing offenders from punishment, and that such "mischievous and absurd consequences" justify this court in saving the prior penalties by construction. The argument is temptingly forceful, and if Act No. 114 were ambiguous, its meaning being sought, and more than one construction of its language reasonable, it would be persuasive. However Act No. 114 is construed, whether prospective, retroactive, or both, its effect of repeal on amended sections is the same, because, on a day certain, by the language of the law, they were abrogated and new sections "to read as follows" were substituted for them.

No reason can be urged against the rule itself. If observed in making laws, it certainly and accur-

ately expresses the will of the legislature according to the natural meaning of the words used. No principle of sociology would warrant the abrogation of a rule upon which legislation has been enacted and construed since the establishment of the State, because, in a single or a few instances, misfortune follows, not its observance, but its disregard. Nor can it confer upon the court legislative power to correct mistakes in unambiguous laws. Two familiar and recent examples of such mistakes, which the court could not remedy, were the repeal (by Act No. 319, Pub. Acts 1927) of the teachers' pension law (Act No. 174, Pub. Acts 1915, 2 Comp. Laws 1915, §§ 5767–5780) and the want of enacting clause in the act to repeal obsolete laws (Act No. 211), in 1927.

Nor, upon the grounds of ultimate public good, as distinguished from the immediate consequences, is the sociological argument entirely without answer. There are such offsetting considerations as the overruling of a long line of decisions of this court, upon which personal and property rights have been established; the abrogation of a certain and reasonable rule of statutory construction which accurately mirrors the language of the legislature; the substitution for it of an uncertain or no rule, with confusing effect; the encouragement of carelessness in lawmaking, with the idea that this court will legislate virtue into or evil out of the law as enacted by the legislature; and, of the first importance, the departure of the court from its constitutional judicial function to usurp legislative power by supplying a saving clause which the legislature has purposely or inadvertently omitted.

In my opinion, both authority and reason require us to hold that section 51 of Act No. 338 was repealed by Act No. 114, and there exists no penal statute under which defendants can be punished.

We suggest to the legislature that, if this ruling does not accord with its actual intention, a similar situation may be avoided in the future by the enactment of a general saving statute, covering such cases and with such provisions as the legislature may determine.

Judgment is affirmed.

Wiest, C. J., and Clark, Potter, and North, JJ., concurred with Fead, J.

Butzel, J. (*dissenting*). I cannot agree with the conclusion as set forth in the very able and forceful opinion of my colleague, Justice Fead. The rule of statutory repeal by implication, as set forth therein, first appears in the "History of the Pleas of the Crown," by Sir Mathew Hale. He discusses an act of parliament, 1 Edw. VI, cap. 12, which repeals certain penal statutes. Hale's philosophic comments or dictum seem to be the basis, or at least the first expression, of the rule of construction under discussion in the present case. *Miller's Case* (1764), 1 Wm. Bl. 451, so frequently cited, seems to have been the first English case to adopt the rule and make a like statement to that made by Hale. This rule was applied in a criminal case in England in 1820, in *Rex* v. *McKenzie,* Russ. & Ryan, 429, wherein it was held that the reduction of punishment for larceny of over a certain amount, from death to life imprisonment, by new legislation, released the prisoner from the operation of both the old and new statutes, although he was punished under the common law. The rule was adopted by the United States Supreme Court as early as 1804 in *United States* v. *Passmore,* 4 Dall. (U. S.) 372. In that case Sir Mathew Hale's work and *Miller's Case* are referred to as authority. The rule was

adopted in many other cases by both Federal and State courts. The very early opinions seem to have been largely in cases where a later law showed more leniency than the earlier one under which the charge against the prisoner had been made. However, upon the authority of these early cases, a general rule was adopted by the great weight of authority. Many of the cases are quite old, and the question has not been so frequently before the courts in later years. This may be due to the fact that congress, as well as many States, adopted a general saving clause act; or that the rule was accepted as one that had been adopted by the many early decisions when precedent was so strictly and almost religiously adhered to, irrespective of results. The doctrine of *stare decisis* is one of fundamental importance. The courts, however, at times have refused to be bound by it, when too strict an adherence would work against the interests of society. That does not mean that a rule of law is to be lightly cast aside; but where a rule of construction, self-imposed by the court, will lead to an absurd result and violate all rules of common sense, the selfsame court may change its own rule.

Another rule equally as important is that the intent to repeal must very clearly appear. Courts will not hold to a repeal if they can find reasonable grounds to the contrary. *Merrill* v. *President, etc., of Kalamazoo,* 35 Mich. 211; *Connors* v. *Carp River Iron Co.,* 54 Mich. 168.

Another generally recognized rule is that if it possibly can be avoided, a construction will not be placed upon a statute so as to lead to a result that violates good common sense and works against the interests of society. In determining to what extent an amendatory act repeals the former one, con-

sideration must be given to the purport of the act as well as to its language. The absence of a saving clause alone does not necessarily indicate that a former statute is repealed as to unpunished crimes committed previous to the time the amendatory act goes into effect, if the very purpose of the act, as well as its language, clearly indicates that there could have been no intention to repeal. I cannot conceive how a legislature can look upon an offense forbidden by a former law as having become far more serious and for this reason increase the punishment, and at the same time intend that for 90 days after the new law's enactment the very same offense may be committed without any punishment whatsoever.

There is no question in this case as to any offenses that were committed subsequent to the time the 1929 law (Act No. 114, Cuthbertson act) went into effect. The only questions are: Did the respondent during the 90 days between the time of the adjournment of the legislature and the time the Cuthbertson act took effect have the right to manufacture and sell liquor without incurring any criminal liability whatsoever under the laws of this State, and if he did, may he, after the new law has gone into effect, be tried and if convicted punished under the provisions of the 1917 act (Act No. 338)? The rule that every amendatory act repeals by implication previous acts and discharges violators from liability for offenses committed, but for which they have not been convicted and sentenced prior to the time the new law goes into effect, to me seems arbitrary, technical, anti-social, and contrary to the interests of justice. Many of the courts in upholding this rule have tacitly admitted that while such construction is technically correct, it nevertheless leads to a

wrong result. In *State* v. *Smith,* 56 Ore. 21 (107 Pac. 980), the court upheld the rule for a crime committed during 90-day interval (as in the case at issue), but expressed itself as not being unmindful of the embarrassing and serious consequences that might follow its decision. The leading case in this country upholding such rule is that of *Hartung* v. *People,* 22 N. Y. 95, where it was held that a defendant convicted of the crime of murder must be released because, while an appeal was being taken, the statute in regard to the punishment for murder was amended. However, in the case of *Mongeon* v. *People,* 55 N. Y. 613, the question arose as to the construction of a statute in relation to abortion which referred to crimes which "shall hereafter" be committed. The court stated, in referring to the case of *Hartung* v. *People, supra,* that the new statute was prospective, inasmuch as it referred to crimes that "shall hereafter" be committed, and that it did not affect crimes that had been committed prior to its enactment. The court further remarked that the legislature in enacting the new law had tried to avoid the "blunder" they made in previous laws as discussed in *Hartung* v. *People, supra.* It goes without saying that there cannot be an intent by the legislature to commit a blunder. I believe that the 1929 amendment only applied to offenses committed after it went into effect, and that it did not repeal the 1917 law in regard to offenses committed prior to the time when it took effect.

The 1929 amendment (Cuthbertson act), section 51, states that any person "who * * * *shall* * * * violate * * * ." The word "shall" denotes the future tense, and for that reason the act is wholly prospective and falls within the exception stated in the case of *People* v. *Hiller,* 113 Mich. 209. The

word "shall" in a statute indicates a prospective operation unless accompanied by other words indicating a contrary intention. *Perkins* v. *Perkins,* 7 Conn. 558 (18 Am. Dec. 120) ; *Indianapolis & Cincinnati R. Co.* v. *Kercheval,* 16 Ind. 84; *Giles* v. *Giles,* 22 Minn. 348; *Murphy* v. *McKeon,* 53 N. J. Eq. 406 (32 Atl. 374) ; *Stisser* v. *Railroad Co.,* 32 App. Div. (N. Y.) 98 (52 N. Y. Supp. 861) ; *City of Lawrence* v. *Town of Methuen,* 187 Mass. 592 (73 N. E. 860) ; *Hemsley* v. *Hollingsworth,* 119 Md. 431 (87 Atl. 506) ; *Ex parte Morel* (D. C.), 292 Fed. 423.

The repeal of a former law by implication through the adoption of an amendment to the old law was considered in the case of *People* v. *Hiller, supra.* The 1889 statute provided that any administrator, executor, etc., who did not, within 30 days, conform with an order of the probate court to deliver over moneys, etc., would be deemed guilty of embezzlement and upon conviction be imprisoned for not more than two years or by a fine not exceeding $1,000. The amendment of 1895 extended the time to 60 days within which to conform with the order, and increased the penalty to not more than five years' imprisonment and the fine to not more than $2,000. Hiller was charged with the embezzlement defined in the act, but prior to the time when the 1895 amendment took effect. In holding that the 1895 amendment repealed the 1889 statute, the court, however, said at p. 212 (113 Mich.) :

"The only exceptions to the rule herein stated are where the State enacting the new legislation has a general law which operates as a saving clause, or where the new legislation *indicates very clearly,* that its provisions are to apply only to offenses thereafter committed. It was doubtless competent for the legislature to continue the penalty for

offenses committed under the old law, after the new law took effect, by attaching to the new law a saving clause, or by indicating in the law itself that its provisions were to attach only to offenses committed after the law became operative; but neither of these things was done. On the contrary, the law of 1895, by its terms, applies to any administrator, executor, or guardian 'who has been appointed by a judge of probate,' etc.''

In *Re Lambrecht*, 137 Mich. 450, the court, in discussing the effect of the indeterminate law increasing the minimum punishment for crime beyond the term for which respondent could be punished at the time the crime was committed, held that the prisoner was properly convicted in accordance with the law and rules in existence at the time of the commission of the crime, and could not be imprisoned for the longer time provided for in the new law. The court said:

''This is obvious, for the punishment is increased, as the minimum punishment under the act is greater than that provided by section 11784, subd. 2, 3 Comp. Laws (1897).

''Is the act retroactive? The legislative intent must govern when it can be ascertained.

'' 'It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively.' Cooley, Const. Lim. (6th Ed.), p. 455; Endlich Int. of Stat. § 271; *Angell* v. *City of West Bay City*, 117 Mich. 685.

''The legislature is presumed to know that penal statutes cannot be made retroactive. It should therefore be held that they intended such a statute to act prospectively, if the language would reasonably permit such a construction.

'' 'A thing which is within the spirit of a statute is within the statute, although not within the letter; and a thing within the letter is not within the statute, unless within the intention.' *Common Council of Detroit* v. *Rush*, 82 Mich. 532, 542 (10 L. R. A. 171).

"We are therefore of the opinion that the legislature, in providing for the sentence of persons 'hereafter convicted of crime,' intended only crimes committed after the act took effect. * * *

" 'An interpretation of a statute which must lead to consequences which are mischievous and absurd is inadmissible if the statute is susceptible of another interpretation by which such consequences can be avoided.' Sutherland Stat. Con., § 238; *Alvord* v. *Lent*, 23 Mich. 369.

" 'Not infrequently a clause is inserted in a statute repealing all laws in conflict or inconsistent with it, "contravening" it, or the like. If the provisions of the former and present enactments are in direct contrariety, the repeal takes place, but only to the extent of the repugnance. If, on the other hand, by any reasonable contracting, expanding, cutting short, or extending of the old laws or the new, as explained in the foregoing chapter, they can be brought into harmony without repeal, the interpretation should be so, and all suffered to stand together.' Bishop on Stat. Crimes (2d Ed.), par. 2, § 152."

In the case of *People* v. *Schoenberg*, 161 Mich. 88, a situation very much like the one at issue was presented. An old liquor law had been amended without a saving clause as to violations prior to the time when the law went into effect. An information was filed against respondent on August 23, 1909, for keeping his saloon open on Sunday. The amendment to the law went into effect on September 1, 1909. The amended act (Act No. 291, Pub. Acts 1909), both in the definition of the crime and in the punishment of its violation, was identical with the old law (Act No. 313, Pub. Acts 1887), except that section 7 of the old act provided for a forfeiture of a liquor license upon a single conviction, while the amended act made a second conviction the ground for forfeiture. Mr. Justice BROOKE, in his opinion on behalf of the court, stated at page 93 *et seq.*:

"We are clearly of the opinion that it was the legislative purpose to continue in effect the provisions of sections 7 and 17 so far as they were re-enacted, and therefore that there was no necessity for a clause saving prosecutions under the old law.

That Act No. 291 repeals such of the old law as is repugnant to its terms is not questioned, but we are unable to discover any repugnancy in those portions of sections 7 and 17, under which respondent is charged and has been sentenced. The contrary view would lead to the astounding result that all those who had been guilty of breaches of provisions of the old law, if not sentenced until after the new law went into effect (September 1, 1909), would entirely escape punishment, although the new law defined the offense in the same terms and provided the same penalty as the old. Common sense prohibits such construction.

> " 'An interpretation of a statute which must lead to consequences which are mischievous and absurd is inadmissible if the statute is susceptible of another interpretation by which such consequences can be avoided.' 2 Lewis' Sutherland on Statutory Construction (2d Ed.), § 367."

Mr. Justice BROOKE in his opinion also quotes the case of *Sage* v. *State*, 127 Ind. 15 (26 N. E. 667), wherein the court held:

> " 'Principle forbids the conclusion that an amendatory statute defining an offense in substantially the same language as that employed in the statute it amends, takes away the right of the State to prosecute the offender and requires his unconditional discharge. It cannot be logically affirmed, where the same offense is defined in the same way by both the earlier and the later statute, that there is an interregnum in which there was no law defining the offense. The two acts interfuse and blend so fully and compactly that it is impossible that there can be an interval when there was no law. Between the two acts there is no period of intervening time in which no offense existed. The duration of the statutes was unbroken and continuous, and the crime one and the same. The amendatory act creates no new offense, nor does it absolve an offender from one previously committed'—citing cases.

"We have seen that section 36, Act No. 291, provides that two convictions for violation of the liquor laws of the State render a person ineligible for a license, if the convictions are had after the new act takes effect. This provision is, by its terms, prospective in its operation, and could have no bearing upon prosecutions pending at the time the new statute be-

came law, nor would a conviction, had after the new law took effect, for an offense committed before that time, be a conviction within the meaning of section 36, and thus count as one of the two convictions which would render the offender ineligible for a license. See *In re Lambrecht*, 137 Mich. 450.

"The conviction is affirmed, and respondent is remanded to serve the sentence imposed."

A case very similar to the one at issue is *State* v. *Broadway*, 157 N. C. 598 (72 S. E. 987), where the respondent was convicted and sentenced under an old law after the amending act increasing the punishment went into effect. The court stated as follows:

"An *ex post facto* law is one which either makes that a crime which was not a crime at the time the offense was committed or imposes a heavier sentence than that which was prescribed by law at the time the offense was committed. Here there was no change in the constituent elements of the crime. The change in the punishment took effect only, by the terms of the statute, 'from its ratification,' and hence did not apply to an offense which was committed prior to its enactment.

"Repeals by implication are not favored by the law. In this case there is neither express repeal of any part of the statute nor any repeal by implication. The statute stands intact as it was, the legislature simply adding ten years to the quantum of the punishment which the judge might impose. This additional ten years was to take effect in the future, and indeed under the constitutional provision forbidding *ex post facto* laws such additional punishment could not have applied to such crimes unless committed after the act. The legislature did not attempt to make it apply to crimes committed before that time, nor did the judge.

"The subject is so fully and ably discussed by Mr. Justice Walker, in *State* v. *Perkins*, 141 N. C. 797

(53 S. E. 735, 9 L. R. A. [N. S.] 165), that we can add nothing thereto. He quotes from Potter's Dwarris on Statutes, 156, with approval, the following, which is conclusive of this case: 'It is a general rule that subsequent statutes, which add accumulated penalties and institute new methods of proceeding, do not repeal former penalties and methods of procedure ordained by preceding statutes, without negative words.' He also quotes with approval 26 Am. & Eng. Enc. (2d Ed.) 726, as follows: 'Every effort must be used to make all acts stand, and the later act will not operate as a repeal of the earlier one, if by any reasonable construction they can be reconciled. The repeal in any case will be measured by the extent of the conflict or the inconsistency between the acts, and if any part of the earlier act can stand as not superseded or affected by the later one, it will not be repealed.' In the present case the extension of the limit of the punishment which the judge could impose *in futuro* in nowise affected the elements which constitute the crime nor the punishment which would be imposed for its commission prior to the passage of the new act."

In the case of *State* v. *Perkins,* 141 N. C. 797 (53 S. E. 735, 9 L. R. A. [N. S.] 165), where a similar condition presented itself, the court said:

*"The act of 1905 forbids the sale of liquor and prescribes a much greater punishment than that fixed by the act of 1903 for selling liquor without a license, and its general features clearly indicate a purpose on the part of the legislature to adopt more drastic measures for the suppression of the liquor traffic. Can it be reasonably supposed that with this object in view and in its then frame of mind, it designed to extend pardon and forgiveness to those who had violated the provisions of the former act?* Why should we come to such a conclusion and give to the repealing clause of the act of 1905 the same

meaning we would to words of unqualified repeal, which is so much at variance with the declared will of that body? *Will it not be more reasonable and more likely to effectuate the intention of the legislature if we hold that the act of 1903 is still in force as to offenses already committed when the act of 1905 took effect, and to confine the latter act to its proper and legitimate sphere by applying it to offenses thereafter committed? This brings the two acts into harmonious operation by repealing the former act so far as it conflicts and leaving it in full effect where it does not interfere with the full operation of the other act? There is abundant authority, we think, for this construction.*"

While we are much impressed with the logic of the rule set forth in Justice Fead's opinion, and the further fact that it is supported by the weight of authority, nevertheless we are not satisfied with its correctness in the present instance. We are impressed with a rule that appeals to common sense and which is set forth in *People* v. *Schoenberg, supra,* and states the generally recognized principle that an interpretation of a statute which must lead to mischievous and absurd consequences should not be adopted, if the statute is susceptible of another interpretation by which such consequences can be avoided. We are more inclined to follow the rule set forth in *Sage* v. *State, supra,* quoted at length in the excerpt in the opinion in *People* v. *Schoenberg, supra,* which states that when the same offense is defined in the same way by both the earlier and later statutes, there is no interregnum in which the offense may be committed and the offender absolved. It is just as logical to conclude that the repeal by implication only affects crimes that were committed after the new law went into effect and that the old law remained in full force and effect as to crimes

committed before the new law became effective. The case of *People* v. *Hiller, supra,* states that the rule is not to be followed when the new legislation is prospective.

The same question arose in the very recent case of *Cisson* v. *United States,* in the circuit court of appeals for the Fourth Circuit, '37 Fed. (2d) 330. In that case the question before the court was whether a statute increasing the punishment had any effect as to crimes committed prior to its passage, repealing the provisions of the original act. The question presented was similar to the one in the case at issue. Judge John J. Parker, in delivering the opinion of the court, said:

"Congress is forbidden to pass an *ex post facto* law. Const. art. 1, § 9, cl. 3. And it is elementary that a statute is to be construed, if possible, so as not to violate constitutional provisions. The Jones act, therefore, must be construed as applying only to crimes committed after its passage. When so construed, it is just as if the statute read: 'The penalty for each such offense *hereafter committed* shall be a fine not to exceed $10,000 or imprisonment not to exceed five years, or both.' Surely there is nothing in this inconsistent with the application of the penalties prescribed by the National prohibition act (27 USCA) to crimes theretofore committed. It is elementary that repeals by implication are not favored, and that statutes are to be construed together, if possible, so that both will stand. That result is obtained here if the penalties originally prescribed by the National prohibition act be construed as applying to offenses committed prior to the passage of the Jones act, and the penalties of that act, as applying to offenses committed thereafter. This construction is sustained not only by reason, but also by the great weight of authority. *Mongeon* v. *People,* 55 N. Y. 613; *State* v. *Cole,* 2 McCord (S. C.), 1; *State* v.

*Taylor,* 2 McCord (S. C.), 483; *State* v. *Young,* 49 La. Ann. 70 (21 South. 142); *People* v. *Hobson,* 48 Mich. 27; *State* v. *Broadway,* 157 N. C. 598 (72 S. E. 987); *State* v. *Perkins,* 141 N. C. 797 (53 S. E. 735, 9 L. R. A. [N. S.] 165); *State* v. *Putney,* 61 N. C. 543; *Commonwealth* v. *Pegram,* 1 Leigh (28 Va.), 569; *Miles* v. *State,* 40 Ala. 39, 42; 1 Lewis' Sutherland on Statutory Construction (2d Ed.), p. 484. And it is certainly fair to assume that congress, by increasing the punishment for violations of the National prohibition act, did not intend to grant a general amnesty for violations of the act theretofore committed. The learned judge below was correct, therefore, in holding that, as to offenses committed prior to its passage, the Jones law did not repeal the punishments prescribed by the National prohibition act.''

However difficult it may be at times to ascertain the intent of the legislature, it seems plainly obvious in the present instance. An examination of the Public Acts of 1927 and 1929 discloses that a number of other penal statutes were enacted without a saving clause being included in them, but in which the word ''shall'' is used. Act No. 144 of 1929 defines and increases the penalty for breaking and entering a showcase. There are other penal statutes which were amended wherein the punishment was not increased. They contain no saving clause, but the word ''shall'' is used. I am convinced that it was not the intention of the legislature to permit the commission of such crimes with impunity for a period of 90 days. It would seem to me more reasonable to conclude that where the word ''shall'' was used, it was the intent of the legislature that previous laws should remain in full force and effect until the new enactment took effect, and that those guilty under the former laws should be tried and

punished in accordance with the provisions thereof, and those guilty of crimes after the new laws or the amendments of the old law went into effect should be tried, and, if convicted, punished in accordance with the new laws or the amendments thereto. Any other construction than this would be so arbitrary and technical that I cannot believe it would be in accordance with the intent of the legislature.

While it would have been far better had the legislature recognized the trend of the majority of the decisions, as hereinbefore set forth, and adopted a general saving clause or added one when proper to new statutes, nevertheless, we must conclude that in the absence of any saving clause, or any other expression to the contrary, it was the intention of the legislature in the present instance not to repeal the former statutes except as to crimes committed after the new laws went into effect, and that all violators of the law prior to such time should be tried, and, if convicted, punished in accordance with the laws as they stood prior to the time the new enactments went into effect.

It is hereby ordered that the order of the lower court quashing the information in this case be set aside, and that respondents be tried, and, if convicted, sentenced in accordance with the 1917 act as amended prior to the enactment of the amendments of 1929.

The judgment of the lower court should be reversed.

Sharpe, J., concurred with Butzel, J. McDonald, J., did not sit.