THE STATE v. WILLIS DICKHOUT, Appellant.—26 S. W. (2d) 937.

Division Two, April 7, 1930.

*Frans E. Lindquist* for appellant.

*Stratton Shartel*, Attorney-General, and *Ray Weightman*, Assistant Attorney-General, for respondent.

WHITE, J.—From conviction and sentence for robbery in the first degree, October 14, 1927, the defendant appealed.

The information filed in the Circuit Court of Jackson County charged that May 19, 1924, the defendant was convicted in Jackson County of the crime of grand larceny, served a sentence in pursuance of such conviction for a term of two years in the state penitentiary, and was duly discharged. That on July 20, 1924, he made an assault upon one Ralph W. Furhman and one Gladys Bengert, and by putting them in fear, and by force and violence took from them certain jewelry, described at length in the informa-

tion, in due form, charging robbery in the first degree. The value of the different articles of jewelry is stated as amounting to $6,000,

The evidence showed that one Ray Bengert operated a jewelry store under the name of Bengert Jewelry Company at 227 East Tenth Street in Kansas City. On the morning of July 20, 1925, Ray Bengert left the store shortly after eight-thirty, after he had opened the safe. He left his daughter, Gladys Bengert and Ralph Furhman in the store. The daughter was employed as stenographer, secretary and saleslady. Furhman was a watchmaker, and had a work bench in the front of the store. Immediately after Ray Bengert left at the time mentioned, four men entered the store. Two of them stopped near the front of the store where Furhman was at work; the other two walked towards the back of the room and stopped in front of the showcase. Gladys Bengert went to the showcase where the men had stopped, and asked them what they wanted. The two men drew guns. One of them was the defendant, he held her with his left hand, pointed his gun with his right and ordered her into a little wash room at the back of the store. Furhman was then forced into the wash room. While there they could hear the opening of safe doors and the showcase. Subsequently, it was found that the store was robbed of jewelry of value approximating $6,000. Ray Bengert testified that he recovered a portion of the articles stolen, which he identified, of about the value of $3,400. He obtained them at the office of the chief of police about a week after the robbery.

Miss Bengert testified that the defendant made four trips back to the wash room during the course of the robbery. One man of dark complexion, whom she called the Mexican, stood guard over her and Furhman. The defendant Dickhout had no covering over his face, and a part of the time he had his cap off. She identified him very positively. On the third trip the defendant ordered Furhman to get out and give him the combination of the strong box. This Furhman did. Furhman and Miss Bengert were then locked into the wash room, and the robbers left. Furhman broke down the door, and they reported the robbery.

That same morning between eight-thirty and nine o'clock Officer Phipps of the police force, driving to headquarters, met a car with four men in it, and he recognized defendant and another man whose name was Sam Nadl. When he saw them, he noticed they were changing headgear. They were taking off their caps and putting on straw hats. That aroused his suspicion, and he took the license number of their car, but he was unable to turn around and follow them. He afterwards learned of the robbery and found out that the car bearing the license number was owned by a company called "Drive It Yourself Company." It was a rented car. He learned

the address of the person who had rented the car. It was a three-story apartment building. The officers went there, but were unable to gain admission. They broke the door down, and found a man and woman inside. One of the officers, who had gone around to the rear, found three men starting out of the door. He pulled his gun and ordered them to throw up their hands. The men jumped back and closed the door. Presently he saw the three men escaping by climbing down a tree in the back yard. One of them was the defendant.

Some time later a part of the jewelry was secretly placed in the car of Officer Phipps while he was sleeping in the front seat. The defendant was finally arrested September 29, 1927, at Independence, Missouri.

In defense, Dickhout stated that he lived with and supported his mother, a younger brother and sister. He was a driver of an independent laundry truck. He endeavored to show an alibi. His evidence was corroborated by other witnesses.

The State produced the record to show the defendant had previously been convicted of grand larceny, and served a term in the penitentiary. Upon this evidence he was found guilty as charged in the information, and his punishment assessed at twenty years in the penitentiary.

I. The appellant assigns error to the action of the trial court in overruling his application for a preliminary hearing. The record shows that September 17, 1927, he made such application, which was by the court overruled. The application does not appear in the bill of exceptions, nor was any exception saved to the ruling, and the matter is not mentioned in the motion for new trial.

II. Defendant filed a motion to quash the information. This motion is not in the record and we have no means of knowing the ground upon which he bases his motion.

He also objected to the introduction of any evidence and stated as a ground that Section 3310, Revised Statutes 1919, was repealed by the Act of 1927, and higher punishment inflicted for robbery in the first degree; that at the time the defendant was charged with the crime in 1927, the law which he is claimed to have violated did not exist. If we understand appellant's point it is that defendant could not be punished after the repeal of the law, which he violated while it was in force. It is further claimed by the defendant that the Act of 1927, which repealed Section 3310 was *ex post facto,* and could not apply to his case. Under that sort of reasoning, the amendment of any section of the criminal statute

would relieve from punishment a criminal who had violated the law before the amendment and charged with its violation after the amendment. There is no support for any such doctrine.

III. The State claims that this was a proceeding under Section 3702, the Habitual Criminal Act. It was sufficiently proven that the defendant had been convicted and served a term of two years for grand larceny. Section 3702 provides that "if such subsequent offense be such that, upon a first conviction, the offender would be punishable by imprisonment in the penitentiary for life, or for a term which under the provisions of this law might extend to imprisonment for life, then such person shall be punished by imprisonment in the penitentiary for life." The punishment for robbery in the first degree under Section 3310 was not less than five years, with no maximum limit. Then, under Section 3702, the verdict should have been imprisonment for life. The verdict, however, was for twenty years. That is an error in favor of the defendant, of which he cannot complain. In fact he makes no complaint on that score. The verdict is not mentioned in the motion for new trial, nor in the defendant's brief.

On the other hand, the defendant claims that this is a proceeding under Section 3310 for robbery in the first degree. In that case the punishment of twenty years assessed by the jury would come within the terms of Section 3310. The point in the objection to the introduction of evidence is that the amendment of the section in 1927 fixes a higher punishment. It only fixes a higher minimum punishment, ten years. The defendant had no right to complain unless the court in its instruction directed the jury erroneously as to the minimum punishment. No instructions appear in the record. Since the information correctly and completely charges robbery in the first degree, the allegations about the previous conviction might be treated as surplusage, as defendant is inclined to treat it. In that case the objection to evidence was properly overruled, and the verdict was in strict accordance with the information.

IV. Appellant assigns error to the overruling of the demurrer to the evidence at the close of the State's case and at the conclusion of all the evidence. The evidence set out above is entirely sufficient to make out a case, and the demurrers were properly overruled. Other errors alleged in the motion are not sufficiently specific to authorize a review of them. [Sec. 4079, R. S. 1919.]

In the motion for new trial appellant complains of certain instructions, giving their numbers, and also asserts error in the failure of the court fully to instruct on the law of the case. Since no instructions are incorporated in the bill of exceptions, we are unable to say they were either incorrect or insufficient.

We find no error in the record, and the judgment is affirmed. All concur.