STATE OF DELAWARE v. JOSEPH PAUL PATNOVIC.

(*February* 26, 1957.)

Layton, J., sitting.

*Joseph Donald Craven*, Attorney-General, and *Frank O'Donnell, Jr.*, Deputy Attorney-General, for the State.

*Joseph H. Flanzer* for the Defendant.

Superior Court for New Castle County, No. 16, Criminal Action, 1956.

LAYTON, J.:

At common law, the repeal of a penal statute containing no saving clause was held to constitute a bar to the prosecution and punishment of a crime already committed in violation of the statute so repealed. 22 *C. J. S., Criminal Law,* § 27(b)'. And there is a large body of respectable authority which has extended this principle to the extreme lengths of including a case such as this where the statute is not repealed but amended and the amendment purports to increase only the punishment. *People v. Lowell,* 250 *Mich.* 349, 230 *N. W.* 202; *In re Medley,* 134 *U. S.* 160, 10 *S. Ct.* 384, 33 *L. Ed.* 835; *United States v. Yuginovich,* 256 *U. S.* 450, 41 *S. Ct.* 551, 65 *L. Ed.* 1043; *State v. Smith,* 56 *Or.* 21, 107 *P.* 980; *State v. Ingersoll,* 17 *Wis.* 631; *Flaherty v. Thomas,* 1866, 12 *Allen, Mass.,* 428.[1]

There are a few well-reasoned cases which reach the opposite conclusion. The end result of these decisions is to graft an exception on the rigid, common-law rule above discussed in cases where, as here, the amending act is not an outright appeal and seeks only to increase the punishment. Thus, as the Supreme Court of California said in *Sekt v. Justice's Court,* 26 *Cal.* 2d 297, 159 *P.* 2d 17, 23; 167 *A. L. R.* 833.[2]

"This brings us to the exact situation here present—the legal effect of an amendatory act increasing the punishment. On this precise problem there is a conflict of authority. There is substantial authority to the effect that such an amendment repeals

---

[1]It is perhaps a distinction without a difference to note that in the *Lowell* case there were other changes in addition to the increased punishment; in the *Medley* case and the *Flaherty* case, the amended statute expressly repealed all provisions inconsistent therewith; and in the *Smith* & *Ingersoll* cases, the amendments read "so as to read as follows", to which language the Courts accorded some weight.

[2]See the exhaustive annotation following the report of the decision appearing in 167 A. L. R. 845 *et seq.*

the old law and acts as a remission of all offenses not reduced to final judgment. See many cases collected and discussed in *People v. Lowell*, 250 *Mich.* 349, 230 *N. W.* 202; *Commonwealth v. McDonough*, 13 *Allen* 581, 95 *Mass.* 581; *Wilson v. Ohio & Mississippi Railroad Co.*, 64 *Ill.* 542, 16 *Am. Rep.* 565; *Lindzey v. State*, 65 *Miss.* 542, 5 *So.* 99, 7 *Am. St. Rep.* 674; see, generally, 31 *Halsbury's Laws of England*, p. 527, § 688. In practically all these cases the courts expressed great reluctance in exonerating the offender, but apparently felt that the basic common-law rule, above referred to, compelled such result.

"There is substantial and well-reasoned authority to the effect that where the latter statute increases the punishment the Legislature has clearly demonstrated its intent that the act should be punished, and since the offender cannot be punished under the new law because of the *ex post facto* provision of the Constitution, he will be held under the old law. It is presumed from the very purpose of the amendment that the Legislature intended that all offenders should be punished, and a saving clause is implied. *State v. Broadway*, 157 *N. C.* 598, 72 *S. E.* 987; *State v. Perkins*, 141 *N. C.* 797, 53 *S. E.* 735, 9 *L. R. A.* (*N. S.*), 165; *Murphy v. Commonwealth*, 172 *Mass.* 264, 52 *N. E.* 505, 43 *L. R. A.* 154, 70 *Am. St. Rep.* 266; *State v. Fisher*, 126 *W. Va.* 117, 27 *S. E.* 2d 581; *Davis v. State*, 142 *Tex. Cr. R.* 602, 155 *S. W.* 2d 801; *People v. Miller*, 169 *Misc.* 709, 8 *N. Y. S.* 2d 53; *Teague v. Commonwealth*, 172 *Ky.* 665, 189 *S. W.* 908, *L. R. A.* 1917B, 738; *Ong Chang Wing v. United States*, 218 *U. S.* 272, 31 *S. Ct.* 15, 54 *L. Ed.* 1040; see on the entire subject annotation, 55 *A. L. R.* 433. * * *"[3]

See also, *Heath v. State*, 173 *Ind.* 296, 90 *N. E.* 310; *In re Petty*, 22 *Kan.* 477; *Waddell v. Com.*, 84 *Ky.* 276, 1 *S. W.* 480, 482; *State v. Dickhout*, 324 *Mo.* 1194, 26 *S. W.* 2d 937; *State v. Broadway*, 157 *N. C.* 598, 72 *S. E.* 987.[4] Except for a few scattered ob-

---

[3] A general saving clause may have been a factor in the case but the quoted portion of the decision represents a completely separate ground.

[4] In all the cited cases except *State v. Broadway*, a general saving clause may have existed.

servations by Courts in cases where the facts are analogous rather than precisely the same,[5] the above decisions represent nearly all that has been said on the opposite side of the subject. The dearth of authority both pro and con on this point in the past thirty years may be accounted for by the fact that, long since, the Federal government and many of the states have enacted general saving clauses, and in those states where this has not been done, the draftsmen of individual acts have been careful to insert special saving clauses where required.

■ Despite the weight of authority in favor of defendant's position, I am persuaded by the reasoning of those cases holding to the contrary view. (1) If this case is to be governed by the rigid rule announced in *People v. Lowell,* then a clear intent to repeal must appear from the language of the amendment. No intent to have the amendment in question operate as an outright repealer is apparent. In fact, the language of the amendment indicates the contrary. The title reads:

"An Act To Amend Title 21, Delaware Code, Entitled 'Motor Vehicles' in Regard To Penalties For Operation Of A Vehicle While Under The Influence of Intoxicating Liquor or Narcotics." (My emphasis.) 50 *Del. Laws,* c. 569.

It is very plain, I think, that the Legislature intended not a repealer but to increase only the penalties. (2) If the crime of drunken driving had increased to such an alarming extent as to cause the Legislature to double the penalties,[6] then how ridiculous it is to assume that the Legislature intended an outright repealer which would result in a complete forgiveness of all pending prosecutions for drunken driving. To construe the intention of the Legislature in that fashion would lead to an absurd result and violate fundamental rules of common sense. (3) If the so-

---

[5]Dissenting opinion in *People v. Lowell, Fry, J.,* in *Pitman v. Com.,* 1843, 2 Rob., Va., 800.

[6]I can take judicial notice of the declarations by the Governor and other law enforcement agencies in this respect.

called majority rule had its origins in those early common-law cases where there was an outright repeal rather than an amendment then, as the California Sup. Ct. remarked:

"The cases that hold that this rule must be applied where by amendment the punishment has been increased, do so by blindly applying the common-law rule to a situation where the reason for the rule does not exist." *Sekt v. Justice's Court, supra.*

A departure from long precedent should not be undertaken lightly. But here, as far as my reading discloses, no Court has had occasion to breathe fresh life into the common-law rule for nearly thirty years. The rule originated in the very early common law. Insofar as concerns amendments such as that under consideration here, it arose through an unwarranted extension of the common-law rule having to do with cases of outright repeal. The most persuasive reasons exist for putting an end to the rule in cases where the amendment increases only the punishment.

Accordingly, I hold that where a penal act is amended by increasing the punishment only, an implied saving clause must be written into the amendment insofar as concerns all pending prosecutions.

Other reasons for a new trial are (1) the verdict was against the evidence and (2) the Court erred in permitting the State to reopen its case after both sides had rested. To the contrary, there was substantial evidence adduced by the State supporting the conviction and, in my judgment, the discretion of the Court was not abused by permitting the State to offer additional evidence at the point where both sides had rested. *Commonwealth v. Cohan,* 307 *Mass.* 179, 29 *N. E.* 2d 693.