STATE OF DELAWARE v. WILLIAM J. McGONIGAL, Defendant.
STATE OF DELAWARE v. JAMES L. WILLIAMS, Defendant.

(*March* 20, 1963.)

LYNCH, J., sitting.

*Robert C. O'Hara* and *John P. Daley* for Defendants.

*Warren B. Burt,* Deputy Attorney-General, for the State of Delaware.

Superior Court for New Castle County, Nos. 333 and 351, Cr. A., 1962.

LYNCH, Judge.

William J. McConigal and James L. Williams were convicted in the Municipal Court of the City of Wilming-

ton on April 13, 1962 under 11 *Del. C.* § 662 for violations of that statute, alleged to have occurred on December 22, 1961 and March 6, 1962, respectively.

The first paragraph of the cited statute under which the defendants were charged read, at the time the offenses allegedly were committed, as follows:

"Whoever is concerned in interest in lottery policy writing, or in selling or disposing of any lottery policy or certificate, or number or numbers or anything by which such person or any other person or persons promise or guarantee that any particular number or numbers, character, ticket or certificate, shall in the event or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money or property or evidence of debt;   *   *   *."

This paragraph was not affected by passage of House Bill No. 390, mentioned and considered hereafter.

The third paragraph of the cited statute, effective when the alleged crimes were committed, read:

"Shall be fined not less than $100 nor more than $1,000, and in default of the payment thereof, imprisoned not less than 1 nor more than 12 months."

This paragraph was, in my opinion, "expressly repealed" by the enactment of House Bill No. 390,—as hereafter shown.

Following their convictions in the Municipal Court, the defendants appealed to this Court and new Criminal Informations were filed, again charging them with violations of 11 *Del. C.* § 662, as they had been charged in the Court below.

During the pendency of their appeals, the General Assembly of this state enacted House Bill No. 390, i.e. approved on April 26, 1962, 11 *Del. C.* § 661 et seq., which read in these terms:

"AN ACT TO AMEND TITLE 11, DELAWARE CODE OF 1953, CHAPTER 3, SUBCHAPTER XXXV, ENTITLED 'LOTTERIES, GAMBLING AND BETTING' BY PROVIDING PENALTIES FOR VIOLATIONS OF SECTIONS 661, 662, 663, 664, 665, 667, 669 AND 670.

"BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

"Section 1. Title 11, Delaware Code of 1953, Chapter 3, Subchapter XXXV entitled 'Lotteries, Gambling and Betting' be and the same is hereby amended by adding a new section at the end of said Subchapter as follows:

"Section 670(A). *Penalties*

"Whoever shall be convicted of violating Sections 661, 662, 663, 664, 665, 666, 667, 669 and 670 of this chapter shall for a first offense, be fined not more than $500 or imprisoned not more than 6 months, or both; for a second offense, be fined not more than $3,000 or imprisoned not more than 1 year, or both; and for a third and all subsequent offenses, be fined not more than $5,000 and imprisoned not more than 3 years.

"Section 2. *All parts of said Sections* of Title 11, Chapter 3, Subchapter XXXV *which are inconsistent herewith be and the same are hereby repealed.*"[1] (Emphasis supplied.)

---

[1] I emphasize this language because of certain statements appearing in *State v. Patnovic*, 11 Terry 310, 129 A.2d 780, considered hereafter.

Both defendants thereafter moved to dismiss the Informations on the ground that "* * * the statute upon which said information is founded has been repealed by recent legislative amendment to that statute". The defendants argue that prosecutions pending under that section must be dismissed because of the repeal of the penalties section of the law, effective when they allegedly violated the statute.

It is to be first noticed that there was no saving clause written into House Bill No. 390. See Vol. 53 Del. Laws, Ch. 361. Secondly, it is to be observed that after the offense had been committed the paragraph of the law providing penalties for violations was "repealed" by House Bill No. 390 and that they were increased by an entirely new section.

Defendants argue that the effect of an enactment of this type of legislation was considered in detail in *State v. Patnovic*, 11 Terry 310, 129 A.2d 780 (Del.Super.Ct. 1957), and the effect of that ruling is here determinative.

I pause to note that case dealt with the effect of an amendment, 50 Del.Laws, Ch. 56, to 21 *Del. C.* § 4111(a), relating to driving while under the influence of intoxicants, which raised the penalties for violation of that statute. There was no language in the amending statute, 50 Del.Laws, Ch. 56 expressly repealing[2] the then applicable penalty provision in effect when Patnovic allegedly violated the statute, Title 21 *Del. C.* § 4111(a).

---

[2] I point to a footnote appearing in the Patnovic case, 11 Terry at page 312, 129 A.2d at page 781, in which Judge Layton said:

"It is perhaps a distinction without a difference to note that in the *Lowell* case [*People v. Lowell*, 350 Mich. 349, 230 N.W. 202] there were other changes in addition to the increased punishment; *in the Medley case* [In re Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835] *and the Flaherty case* [*Flaherty v. Thomas*, 12 Allen, Mass., 428], *the amending statute expressly repealed all provisions inconsistent therewith;* and in the

Judge Layton, then of this Court, held that the amendment considered in the Patnovic case did not effect a repealer of the penalty provisions of the statute existing before the amendment, but in so deciding the case he acknowledged, 11 Terry at p. 312, 129 A.2d at p. 780, the majority rule in the United States is that the repeal of the punishment or penalties provision of a criminal statute, without a saving clause, does effect a repeal of the prior statute and that violations of the earlier statute, not prosecuted at the date of the amendment, may not be tried after the amendment becomes effective. See his footnote set out as footnote 2 of this opinion.

While acknowledging this to be the majority view, Judge Layton declined to follow it; he reasoned he was able to reach this result by pointing out that the amending statute had no express repealing lanquage in it, as is the case in the statute considered in this case. Judge Layton went one step further and refused to find any implied repeal necessarily arose because of the amending language in the new statute. In so reasoning, Judge Layton, in my opinion, made it clear that if the amending statute had contained repealing language, his result would have been otherwise. For instance, he said (11 Terry at p. 314, 129 A.2d at p. 782):

----

*Smith* [*State v. Smith*, 56 Or. 21, 107 P. 980] & *Ingersoll* [*State v. Ingersoll*, 17 Wis. 631] cases, the amendments read 'so as to read as follows', to which language the Courts accorded some weight." (Emphasis supplied.)

I note that House Bill No. 390 "added a new section" which imposed new and different penalties than had been theretofore existing; it expressly "repealed" all parts of Section "* * * 662 * * * which are inconsistent" with the new section, i.e. § 670(A), which the General Assembly had added to Subchapter XXXV, Chapter 3 of Title 11 of the Code. I cannot imagine a clearer method which the General Assembly could have used to wipe out the third paragraph of Title 11 *Del. C.* § 662, quoted above at p. 2, than *that* used in House Bill No. 390. It made *it* impossible to infer the intent suggested in the State's brief and considered post at p. 7, on which Patnovic was decided.

"Despite the weight of authority in favor of defendant's position, I am persuaded by the reasoning of those cases holding to the contrary view. (1) *If this case is to be governed by the rigid rule announced in People v. Lowell*[3] *[250 Mich. 349, 230 N.W. 202], then a clear intent to repeal must appear from the language of the amendment.* No intent to have the amendment in question operate as an outright repealer is apparent. In fact, the language of the amendment indicates the contrary. * * *" (Emphasis supplied)

The State vigorously contends the intent of the General Assembly controls and since House Bill No. 390 expressly repealed only the punishment or penalty sections of the statute—retaining unchanged the other portions of the statute—the motions to dismiss should be denied under the Patnovic case, since a clear intent to repeal must appear from the amendment, and inasmuch as such clear intent is not apparent, an implied saving clause must be inferred as having been the amendment so far as pending cases are concerned. I cannot accept that argument in light of the difference in phraseology between House Bill No. 390 and 50 Del.Laws, Ch. 56.

I cannot decide these cases upon a supposed "inference" that the General Assembly "intended" no repeal of the penalties provision of the effective law when the express language was used, in House Bill No. 390, noted supra, p. 3, showing a contrary intent.

---

[3]In the Lowell case, the Michigan Supreme Court noted:

"In the absence of a saving clause, the repeal of a criminal statute operates from the moment it takes effect, to defeat all pending prosecutions under the repealed statute. * * *" 230 N.W. at page 203 (1930)

It is true that House Bill No. 390 did not repeal the first paragraph of Title 11 *Del. C.* § 662, but it did operate to repeal the third paragraph which provided the penalties for violations of the statute. What penalty would be imposed on sentence if these defendants were hereafter tried and convicted?

There were several groups of prominent citizens, including a number of lawyers, whom I regard as quite learned in the law, urging passage of House Bill No. 390 and in light of the then recent Patnovic decision, as well as the well publicized activity on the part of the police in their inti-gambling activities by way of raids on gambling dens, which resulted in many arrests and consequent prosecutions of alleged gamblers, and the many public statements that had been made concerning this legislation, it must be assumed those involved in urging passage of House Bill No. 390 were familiar with the statement of law in the Patnovic case and its possible effect on pending cases.

The State concedes that the common law rule that repeal of a criminal statute or the penalty provisions of a criminal statute requires dismissal of prosecutions pending thereunder is based on the inference that the repeal evidences a legislative intent to pardon past acts under the repealed law. 22 C.J.S. Criminal Law § 27(4). The Court is of opinion that Judge Layton's language in Patnovic, 11 Terry at page 314, 129 A.2d at page 782, cited supra at page 673, is applicable and dispositive of this case.

It is to be observed that Judge Layton read "an implied saving clause[4] must be written into the amendment [to Title 21 *Del. C.*, § 4111(a), the basis of the prosecution in Patnovic] insofar as [it concerned] all pending prosecutions", since there was no express language of repeal, such as is found in House Bill No. 390, which became

---

[4]He thus showed, in my opinion, he would have applied the penalty that was in effect when Patnovic was arrested and not the newly increased penalty. He could do so since it had not been "expressly repealed". I doubt that this can be done here since House Bill No. 390 "expressly repealed" the then pertinent penalty provisions attaching to violations of Title 11 *Del. C.* § 662.

Vol. 53, Del.Laws, Ch. 361. House Bill No. 390 as has been pointed out, supra p. 673, used express repealing language, thus bringing into effect the common law rule mentioned by Judge Layton and referred to above at page 673. Those who wrote House Bill No. 390 must be charged with a knowledge of what was said in Patnovic and failure to insert a saving clause gives this Court no option of what must be done.

Another argument which suggests itself is whether or not the changes in the penalty provisions in House Bill No. 390, adopted after defendants committed the alleged offenses, should be regarded as *ex post facto* and, therefore, unconstitutional and invalid—see Article 1, § 10 of the Federal Constitution—at least as to these defendants, if the State would want to prosecute them. The briefs did not consider this question.

The general subject matter is considered in 24B C.J.S. Criminal Law § 1975, page 543; 15 Am.Jur.—Criminal Law—§§ 515-516 and 1 Wharton's Criminal Law and Procedure, § 20, p. 43. It is said in the last citation:

"By virtue of the provisions of United States Constitution * * * state legislators may [not] adopt *ex post facto* legislation, that is a statute is unconstitutional which * * * increases the penalty which was attached to the act at the time of its commission, * * *."

I am aware of the fact that these defendants are not now being tried for their alleged criminal acts; I point out, however, that House Bill No. 390 had "expressly repealed" the penalty attached to the statute as it read when defendants allegedly violated the statute, and since these old penalties had been "expressly repealed" what penalties could be imposed upon them, if they were tried and convicted?

This illustrates the position that faces the State and lends substance to Judge Layton's comments in Patnovic; it shows just why the Court is forced to grant defendants' motions to dismiss. If they were now tried and convicted there are now no existing applicable penalties which could be applied in punishment; the old penalty provision had been expressly repealed and the new penalty, provided by House Bill No. 390, could not apply since it must be regarded as *ex post facto*.

To me it is an unfortunate consequence of what in 1961 seemed to me to be a move in the right direction. The unfortunate consequence here could have been obviated if those urging passage of House Bill No. 390 had inserted a saving clause in it.

I am unalterably opposed to the gambling condemned by the statute; on the other hand, I must decide a case involving the liberties of an accused on the basis of the applicable law and not on what may be my personal feelings,—whatever they may be—with respect to the actions of the men charged in these cases.

I want it noted that I have read and carefully considered all the authorities and annotations cited by the State in support of its position. The State's brief was unusually well thought out and written; a noble effort was made to save these cases for prosecution; however, Judge Layton's language in Patnovic, as above quoted at page 6, represents the present state of the law and I am persuaded and governed by it.

An order may be presented providing that the defendants' motions to dismiss are granted.